# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Voters Alliance, Andrew Cilek, Kim Crockett, Craig Anderson, Yvonne Hundshamer, Craig Jones, <br><br> Plaintiffs, <br><br> v. <br><br> Tim Walz, in his official capacity as Governor of Minnesota, or his successor; Steve Simon, in his official capacity as Secretary of State of Minnesota, or his successor, Mark V. Chapin, in his official capacity as Hennepin County Auditor, or his successor, Christoper A. Samuel, in his official capacity as Ramsey County Auditor, or his successor, Keith Ellison, in his official capacity as Attorney General of Minnesota, or his successor, Mike Freeman, in his official capacity as Hennepin County Attorney, or his successor, John Choi, in his official capacity as Ramsey County Attorney, or his successor, <br><br> Defendants. | Case No. _____ <br><br><br><br> **Complaint for Declaratory and Injunctive Relief** |

## Introduction

Even in pandemics, when there is a likelihood of government deprivation of civil liberties, the branches of the government have to work to together to ensure that the laws are narrowly tailored to meet a compelling state interest. No one in this case

is saying that mask wearing isn't a good thing. It's just in this case the State of Minnesota has created conflicting laws where people are criminally prosecuted for wearing a mask and for not wearing a mask. The executive and legislative branch must decide which law prevails. Meanwhile, failing to do so has created a chilling effect on the plaintiffs who wish to exercise their political rights protected by the First Amendment in public places—including attendance at polling places for in-person voting.

## Jurisdiction and Venue

1.    In bringing this case, the Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 2201 (declaratory-judgment jurisdiction), and 42 USC §§ 1983, 1988 (civil-rights statutes). The Court also has supplemental jurisdiction over the claims brought under the Minnesota Constitution. 28 U.S.C. § 1367.

2.    Venue is proper in this Court under 28 U.S.C. § 1391 because all the Defendants are Minnesota public officials and reside within this district, and because the events or omissions giving rise to the claims presented occurred within this district.

## Parties

### A. The Plaintiffs

3.      The Plaintiffs are Minnesota political participants and a Minnesota nonprofit corporation.

### Plaintiff Andrew Cilek

4.      Plaintiff Andrew Cilek is a voter, resident and taxpayer in Minnesota. He resides in Hennepin County.

### Plaintiff Kim Crockett

5.      Plaintiff Kim Crockett is a voter, resident and taxpayer in Minnesota. He resides in Hennepin County.

### Plaintiff Craig Anderson

6.      Plaintiff Craig Anderson is a voter, resident and taxpayer in Minnesota. He resides in Ramsey County.

### Plaintiff Yvonne Hundshamer

7.      Plaintiff Yvonne Hundshamer is a voter, resident and taxpayer in Minnesota. She resides in Ramsey County.

### Plaintiff Craig Jones

8.      Plaintiff Craig Jones is a voter, resident and taxpayer in Minnesota. He resides in Ramsey County.

### Plaintiff Minnesota Voters Alliance

9.      Minnesota Voters Alliance (MVA) is a Minnesota nonprofit corporation with members and supporters who seek to ensure, as part of their collective objectives, public confidence in the integrity of Minnesota's elections, in election

results and election systems, processes, procedures, and enforcement, and that public officials act in accordance with the law in exercising their obligations to the people of the State of Minnesota. Its membership includes individual registered voters and taxpayers. Andy Cilek is MVA's President. The rest of the plaintiffs are MVA members and supporters.

## B. The Defendants

10.     The Defendants are public officials in Minnesota.

### Defendant Tim Walz

11.     Defendant Tim Walz, Minnesota's Governor, is sued in his official capacity.

### Defendant Steve Simon

12.     Defendant Steve Simon, Minnesota's Secretary of State, is sued in his official capacity.

### Defendant Mark V. Chapin

13.     Defendant Mark V. Chapin, Hennepin County Auditor, is sued in his official capacity.

### Defendant Christopher A. Samuel

14.     Defendant Christopher A. Samuel, Ramsey County Auditor, is sued in his official capacity.

### Defendant Keith Ellison

15.     Defendant Keith Ellison, Minnesota's Attorney General, is sued in his official capacity.

**Defendant Mike Freeman**

16.     Defendant Mike Freeman, the Hennepin County Attorney, is sued in his official capacity.

***Defendant John Choi.***

17.     Defendant John Choi, the Ramsey County Attorney, is sued in his official capacity.

**Standing**

18.     An actual controversy exists between the parties, and the Plaintiffs have suffered an injury-in-fact that is directly traceable to the Defendants. 28 U.S.C. § 2201. Specifically, the Plaintiffs have engaged, or propose to engage, in campaigning and voting activities either wearing a face mask or not wearing a face mask. Under Minnesota law, both wearing a face mask and not wearing a face mask are criminal activities. The Plaintiffs fear that, as a result of the Plaintiffs' speech, expressive and associational activities in public places, including in-person voting, at least one of the Defendants will initiate a complaint or prosecute at least one of the Plaintiffs for either the Plaintiff wearing a mask or not wearing a face mask. Therefore, the Plaintiffs and each of them have had their First Amendment political activities deterred and chilled.

19.     The impending threatened injury to the Plaintiffs is real and concrete.

20.     This Court's favorable decision will redress the Plaintiffs' injuries and allow them to exercise their First Amendment rights without fear of being sued or prosecuted.

## Statement of Facts

### Procedural Background

21.     On March 13, 2020, the Governor signed "Executive Order 20-01: Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19"

22.     Since then, the Governor has issued eighty-two executive orders, Nos. 20-01 through 20-82.

23.     The Governor has claimed legal authority to issue these executive orders pursuant to Minn. Stat. § 12.31, Subd. 2.

24.     The Governor has issued subsequent executive orders extending the peacetime emergency for additional day thirty periods with Executive Order 20-35 on April 13, 2020, Executive Order 20-53 on May 13, 2020, Executive Order 20-75 on June 12, 2020, and Executive Order 20-78 on July 13, 2020.

25.     Each of these executive orders extending the peacetime emergency noted that the governor's asserted authority could only be rescinded by "a majority vote of each house of the legislature pursuant to Minnesota Statute 2019, section 12.31, subdivision 2(b)."

**Executive Order 20-81 makes it a crime not to wear a mask.**

26.     On July 22, 2020, Defendant Walz signed "Executive Order 20-81: Requiring Minnesotans to Wear a Face Covering in Certain Settings to Prevent the Spread of COVID-19." Ex. 1.

27.     Executive Order No. 20-81, page 3, generally asserts: "Minnesotans must wear a face covering in indoor businesses and indoor public settings."

28.     Executive Order No. 20-81, pages 13 and 14, establishes criminal enforcement provisions for not wearing a mask, to-wit:

      a.     For an individual, it is criminal petty misdemeanor not to be wearing a mask: "Any individual [adult, non-student] who willfully violates this Executive Order is guilty of a petty misdemeanor and upon conviction must be punished by a fine not to exceed $100."

      b.     For a business, it is a criminal misdemeanor not to be wearing a mask and requiring compliance: "Any business owner, manager, or supervisor who fails to comply with this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000, or by imprisonment for not more than 90 days."

**Minnesota Statutes § 609.735 makes it a crime to wear a mask.**

29.    However, Minnesota Statutes § 609.735 (Ex. 3) makes wearing a mask in a public place a criminal act, punishable by up to 90 days imprisonment and/or a $1000 fine.

30.    The only exceptions to this prohibition is if wearing a mask is "based on religious beliefs, or incidental to amusement, entertainment, protection from weather, or medical treatment."

31.    Under common definitions of "treatment," mask-wearing to prevent a contagious disease is not medical "treatment." That is why the executive order seeks to assure on page 13 of Executive Order 20-81 that "(w)earing a face covering in compliance with this Executive Order or local ordinances, rules, or orders is not a violation of Minnesota Statutes 2019, section 609.735." Ex. 1.

**The face covering mandate in Executive Order 20-81 does not fit the common understanding of a "medical treatment" to satisfy the exemption in Minnesota Statute § 609.735.**

32.    Executive Order No. 20-81 conflicts with Minnesota Statutes § 609.735 which makes mask wearing a criminal act:

> "A person whose identity is concealed by the person in a public place by means of a … *mask*, or other disguise, unless based on religious beliefs, or incidental to amusement, entertainment, protection from weather, or medical treatment, is guilty of a *misdemeanor*."

Minnesota Statutes §609.735, Concealing Identity.  In Minnesota, wearing a mask in public is a crime.  But, Executive Order No. 20-81 makes it a crime not to wear a mask.

33.     To be sure, Minnesota Statutes § 609.735 does contain an exception for medical "treatment." But, under common definitions of "treatment," mask-wearing to prevent a contagious disease is not medical "treatment."

34.     Medical treatment is commonly defined as, "the management and care of a patient for the purpose of combating disease, injury, or disorder." Or. Admin. R. 436-009-0005 (2020). Unlike medical treatment, public health stresses, "the prevention of disease, while medicine deals with the prevention, diagnosis, and treatment of individuals. Medication, surgery, and other forms of individual intervention are the principal tools of the medical clinician." Harvey V. Feinberg, MD, PhD., Public Health and Medicine: Where the Twain Shall Meet, 41 American Journal of Preventative Medicine 4, Supplement 3. S149 (2011).

35.     Therefore, the commonly understood definition of a medical treatment consists of three elements: preventative action, diagnosis, and treatment of the underlying problem through various methods of intervention.

36.     Under this commonly understood definition Executive Order 20-81 functions as a public health measure and not a medical treatment. The order focuses on preventing and minimizing the spread of COVID-19. It allows broad categories of people to be exempted from the Order requirements in Section 8(a)-(c), but does not tailor any solutions to specific patient concerns. The order lacks any specific instructions regarding treatment for a COVID-19 diagnosis.

37.     These Order requirements are less like a medical treatment and more like the public health requirements mandating the fluoridation of municipal water supplies in Minn. Stat. § 144.145.

38.     In previous Executive Orders, such as 20-33, the Governor recognized his actions were seeking, "to balance public health needs…." Even the Governor admits the public health component of his Executive Orders. Without a medical treatment necessitating a mask exemption, the Order fails to exempt Minnesotans wearing masks in public spaces from the criminal provisions of Minnesota Statute § 609.735.

**Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi are to prosecute plaintiffs for wearing a mask and prosecute plaintiffs for not wearing a mask during political activities in public places.**

39.     Under Minnesota's criminal code, the Attorney General and county attorneys prosecute crimes.

40.     Minnesota Statutes § 609.735 makes wearing a mask in a public place a criminal act.

41.     Under Minnesota Statutes § 609.735, Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi prosecute plaintiffs for wearing a mask and not for wearing a mask.

42.     The Governor's Executive Order no. 20-81 makes not wearing a mask in a public place a criminal act.

43.     Under Governor's Executive Order no. 20-81, Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi prosecute plaintiffs for not for wearing a mask.

44.     So, plaintiffs when engaged in political participation in public places are to be criminally prosecuted by Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi for wearing a mask and for not wearing mask.

45.     Either way, the plaintiffs get prosecuted.

**Secretary of State Simon, Hennepin County Auditor Chapin and Ramsey County Auditor Samuel are enforcing a policy to wear a mask in the polling place—while it is a crime to do so under Minnesota Statutes § 609.735.**

46.     Defendant Secretary of State Simon in his policy implementing the mask mandate dated July 22, 2020 (Ex. 2), requires county auditors and election officials to recommend, encourage and enforce upon all persons in the polling place the Executive Order No. 20-81 mask mandate—under threat of prosecution:

> If the voter insists on voting in the polling place without a face covering, record any violation of the face cover order…Record the name and addresses of a voter from the polling place roster in the incident log along with a notation that the voter refused to comply with the facial covering executive order…

Ex. 2 at 2.

47.     Under Secretary of State Simon's policy, County Auditor Chapin and Ramsey County Auditor Samuel enforce a policy upon voters to wear a mask in the polling place—under threat of prosecution under Executive Order No. 20-81.

48.     But, under Minnesota Statutes § 609.735, the same people that Defendants Simon, Chapin and Samuel are recommending, encouraging and enforcing to wear a mask are committing a crime by wearing the mask under Minnesota Statutes § 609.735.

**Since Minnesota criminalizes both wearing and not wearing a mask, the plaintiffs will not participate in First Amendment protected activities— including in-person voting related to the August 11, 2020 primary election and beyond.**

49.     The Plaintiffs desire to engage in First Amendment protected activities.

50.     During elections and election campaigns, the Plaintiffs, in public places, engage in express political advocacy. Political advocacy includes: running for office; supporting candidates for office; engaging in political debates; speaking at events; inviting others to events; holding events; writing letters or editorials; speaking with news reporters; speaking with friends, family members, strangers, other candidates, office holders, and governmental and nongovernmental officials regarding political philosophies, beliefs, positions, opinions, and interpretations; and encouraging community members to support their positions regardless of their personal ideology. Such political speech is at the core of First Amendment protection.

51.     The Plaintiffs also engage in in-person voting at primary elections and general elections.

52.     Defendants, collectively, have taken steps towards criminalizing or prosecuting plaintiffs when wearing a mask in a public place, including the polling

place, and criminalizing or prosecuting plaintiffs when not wearing a mask in public places, including the polling place.

53.     Minnesota criminalizing both wearing and not wearing a mask in public places, including the polling place, suppresses political participation and voter attendance.

54.     A prominent criminal defense attorney Thomas C. Gallagher in a blog post states that Minnesota criminalizes both wearing and not wearing a mask in public places.   Ex. 4.

55.     The County Attorney Matthew Franzese has by declaration states that Minnesota criminalizes both wearing and not wearing a mask in public places.   Ex. 5.

56.     Since Minnesota criminalizes both wearing and not wearing a mask in public places, the plaintiffs will not participate in First Amendment protected activities—including in-person voting for the August 11, 2020 primary and beyond.

**Plaintiffs claim that Executive Order 20-81 violates the Minnesota Constitution because it violates Article III's non-delegation doctrine and ban on legislative vetoes.**

57.     The plaintiffs also claim that Executive Order 20-81 requiring face mask wearing is unconstitutional under the Minnesota Constitution as violative of the non-delegation doctrine, which prohibits delegation of pure legislative power to the Governor, and violative of the constitutional ban on legislative vetoes, which prohibits the legislature from interfering with the exercise of executive powers.

## Claims

13

**Count 1: The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Executive Order 20-81 criminalizing not wearing a mask in public places violates the plaintiffs' First Amendment rights by failing strict scrutiny.**

58.     The Plaintiffs incorporate this complaint's previous paragraphs.

59.     Political participation in public places is core political speech that is constitutionally protected under the First Amendment's Free Speech Clause, which applies to the states through the Fourteenth Amendment.

60.     A law that restricts core political speech—such as restricting political participants access to public places— is content-based, is subject to strict scrutiny and is unconstitutional unless the law is narrowly tailored to serve a compelling state interest. *E.g.*, *281 Care Comm.*, 766 F.3d at 784–85.

61.     Defendants, collectively, have taken steps towards criminalizing or prosecuting plaintiffs when wearing a mask in a public place and criminalizing or prosecuting plaintiffs when not wearing a mask in a public place.

62.     Minnesota criminalizing both wearing and not wearing a mask in public places suppresses plaintiffs' political participation in public places.

63.     Since Minnesota criminalizes both wearing and not wearing a mask in public places, the plaintiffs will not participate in First Amendment protected activities in public places.

64.     Minnesota Statutes § 609.735 makes wearing a mask in a public place a criminal act.

65.     The Governor's Executive Order no. 20-81 makes not wearing a mask in a public place a criminal act.

66.     The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask does not serve a compelling state interest.

67.     The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask is not narrowly tailored.

68.     On the contrary, the combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask is overbroad.

69.     The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask is overbroad because the government can only criminalize one: wearing a mask or not wearing a mask. When it criminalizes both, it is making everyone a criminal because they are either wearing a mask or not wearing a mask.

70.     The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask is overbroad because it unnecessarily bans, deters, and chills constitutionally protected political activities in public places.

71.     Minnesota has less restrictive means of addressing the pandemic. Minnesota can choose to criminalize not wearing a mask or criminalize wearing a mask. But, it can't constitutionally do both without violating the First Amendment.

72.     The Plaintiffs' political participation in public places is threatened by prosecutions for wearing a mask or not wearing a mask.

73.     One Minnesota County Attorney has stated that Minnesota laws authorize prosecution for both wearing a mask and not wearing a mask in public places. Ex. 5.

74.     Further, as with other criminal laws, wrongful convictions are possible. Minnesota's combination of laws criminalizing wearing and not wearing a mask create a possibility that an innocent person will be fined and jailed, either because of an incorrect determination of the facts or an incorrect determination of the combination of laws criminalizing both wearing and not wearing a mask. *See* Minn. Stat. § 609.03(3) (providing for a jail sentence or a fine as the punishment for a misdemeanor).

75.     Furthermore, a person prosecuted for violating Minnesota's combination of laws criminalizing wearing and not wearing a mask bears the cost of defending against the prosecution even if the criminal complaint is dismissed or the person is acquitted. The risk of the expense of defending oneself is enough to chill protected speech.

76.     Prosecution under Minnesota's combination of laws criminalizing wearing and not wearing a mask is a realistic danger that significantly compromises the ability of Minnesotans to political participate in public places.

77.     That danger risks chilling the Plaintiffs' and others' constitutionally protected political speech, even if nobody is ever prosecuted for violating the section

78.     Minnesota's combination of laws criminalizing wearing and not wearing a mask has restricted, chilled, or banned the Plaintiffs' First Amendment activities in public places.

79.     Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

80.     The plaintiffs are entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's combination of laws criminalizing wearing and not wearing a mask is unconstitutional under the First and Fourteenth Amendments.

81.     A declaratory judgment will serve a useful purpose in settling this complaint's constitutional challenges to Minnesota's combination of laws criminalizing wearing and not wearing a mask in public places.

82.     A declaratory judgment will terminate, and afford relief from, the threat, uncertainty, and insecurity of Minnesota's combination of laws criminalizing wearing and not wearing a mask in public places.

83.    The plaintiffs are further entitled to a permanent injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's combination of laws criminalizing wearing and not wearing a mask in public places.

84.    The defendants' violations of the plaintiffs' constitutional rights have resulted in damages and this Court should grant all relief available under 28 U.S.C. § 1983.

**Count 2: The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Executive Order 20-81 criminalizing not wearing a mask in polling places violates the First Amendment because it is "not capable of reasoned application."**

85.    The Plaintiffs incorporate this complaint's previous paragraphs.

86.    Political participation at the polling place is considered a non-public forum.  Such political participation is constitutionally protected under the First Amendment's Free Speech Clause, which applies to the states through the Fourteenth Amendment. But, strict scrutiny does not apply.

87.    In *Minnesota Voters Alliance v. Mansky*, 138 S.Ct. 1876 (2018), the U.S. Supreme Court held that Minnesota's political apparel ban restricted a form of expression protected by the First Amendment and that a polling place in Minnesota qualifies as a non-public forum for First Amendment purposes.

88.    The U.S. Supreme Court in *Mansky* acknowledged that Minnesota's political apparel ban pursued permissible objective of setting polling place aside as island of calm in which voters could peacefully contemplate their choices, but

18

Minnesota's political apparel ban violated the Free Speech Clause because it was "not capable of reasoned application." *Id.*

89.    Thus, Minnesota's laws affecting political attendance at polling places are unconstitutional if "not capable of reasoned application."

90.    Defendants, collectively, have taken steps towards criminalizing or prosecuting plaintiffs when wearing a mask in a polling place and criminalizing or prosecuting plaintiffs when not wearing a mask in a polling place.

91.    Minnesota criminalizing both wearing and not wearing a mask in polling places suppresses plaintiffs' political attendance in polling places to vote.

92.    Since Minnesota criminalizes both wearing and not wearing a mask in polling places, the plaintiffs will not participate in First Amendment protected attendance at polling places for in-person voting.

93.    Minnesota Statutes § 609.735 makes wearing a mask in a polling place a criminal act.

94.    The Governor's Executive Order no. 20-81 makes not wearing a mask in a polling place a criminal act.

95.    The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask is "not capable of reasoned application" at the polling place.

96.    The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask

provides unbridled discretion to election judges and defendants to determine who to prosecute for wearing a mask and who to prosecute for not wearing a mask.

97.    The combination of Minnesota Statutes § 609.735 criminalizing wearing a mask and Governor's Executive Order no. 20-81 criminalizing not wearing a mask is unconstitutional because it unnecessarily bans, deters, and chills constitutionally protected attendance at polling places to vote.

98.    Minnesota has less restrictive means of addressing the pandemic. Minnesota, in order to fight the pandemic, can choose to criminalize not wearing a mask or criminalize wearing a mask at the polling places. But, it can't do both without violating the First Amendment.

99.    The Plaintiffs' political attendance at polling places is threatened by prosecutions for wearing a mask or not wearing a mask.  And, as with other criminal laws, wrongful convictions are possible. Minnesota's combination of laws criminalizing wearing and not wearing a mask at polling places creates a possibility that an innocent person will be fined and jailed, either because of an incorrect determination of the facts or an incorrect determination of the combination of laws criminalizing both wearing and not wearing a mask. *See* Minn. Stat. § 609.03(3) (providing for a jail sentence or a fine as the punishment for a misdemeanor).

100.    Furthermore, a person prosecuted for violating Minnesota's combination of laws criminalizing wearing and not wearing a mask at polling places bears the cost of defending against the prosecution even if the criminal complaint is dismissed or the

person is acquitted. The risk of the expense of defending oneself is enough to chill attendance at polling places to vote.

101.    Prosecution under Minnesota's combination of laws criminalizing wearing and not wearing a mask at polling places is a realistic danger that significantly compromises the ability of Minnesotans to attend polling places to vote.

102.    That danger risks chilling the Plaintiffs' and others' constitutionally protected attendance at polling places, even if nobody is ever prosecuted for violating the section.

103.    Minnesota's combination of laws criminalizing wearing and not wearing a mask at polling places has restricted, chilled, or banned the Plaintiffs' First Amendment protected attendance at polling places for in-person voting.

104.    Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

105.    The plaintiffs are entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's combination of laws criminalizing wearing and not wearing a mask at polling places is unconstitutional under the First and Fourteenth Amendments.

106.    A declaratory judgment will serve a useful purpose in settling this complaint's constitutional challenges to Minnesota's combination of laws criminalizing wearing and not wearing a mask in polling places.

107.    A declaratory judgment will terminate, and afford relief from, the threat, uncertainty, and insecurity of Minnesota's combination of laws criminalizing wearing and not wearing a mask in pollling places.

108.    The plaintiffs are further entitled to a permanent injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's combination of laws criminalizing wearing and not wearing a mask in polling places.

109.    The defendants' violations of the plaintiffs' constitutional rights have resulted in damages and this Court should grant all relief available under 28 U.S.C. § 1983.

**Count 3: The combination of Minnesota Statutes § 609.735 criminalizing mask wearing a mask and Executive Order 20-81 criminalizing not wearing a mask in public places violates the plaintiffs' First Amendment expressive association rights.**

110.    The Plaintiffs incorporate this complaint's previous paragraphs.

111.    The First Amendment's guarantee of freedom of speech and other enumerated freedoms includes a right to expressive association: "'implicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "'[I]ntrusion into the internal structure or affairs of an association'" can violate the right to expressive association. *Id.* at 648 (quoting *United States Jaycees*, 530 U.S. at 623).

112.    A law burdening expressive association is subject to strict scrutiny. *See, e.g.*, *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984); *Dale*, 530 U.S. at 680 (Stevens, J., dissenting) (citing *United States Jaycees*, 468 U.S. at 623) (dissenting from application of the expressive-association doctrine, but conceding that a law burdening the right to expressive association must be the least restrictive means of achieving a compelling state interest).

113.    As already explained, Minnesota's combination of laws criminalizing wearing and not wearing a mask chills plaintiffs' political activities in public places.

114.    Indeed, as explained, Minnesota's combination of laws criminalizing wearing and not wearing a mask makes any political participation in a public place risky.

115.    Minnesota's combination of laws criminalizing wearing and not wearing a mask, thus, burdens plaintiffs' ability to politically participate in public places.

116.    Minnesota's combination of laws criminalizing wearing and not wearing a mask thus burdens Minnesota Voter Alliance's, its members' and its supporters' ability to advance their causes through cooperation and through fully protected speech in public places.

117.    Minnesota's combination of laws criminalizing wearing and not wearing a mask burdens on the rights to expressive association and free speech are especially grave because many organizations who meet in public places to be effective political

organizations. Indeed, some organizations like Minnesota Voters Alliance have, as their primary purpose, educating and influencing the public.

118.   Minnesota's combination of laws criminalizing wearing and not wearing a mask is thus subject to strict scrutiny as a burden on the right to expressive association.

119.   Minnesota's combination of laws criminalizing wearing and not wearing a mask unconstitutionally burdens the right to expressive association because they are not narrowly tailored to meet a compelling state interest.

120.   The Plaintiffs are thus entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's combination of laws criminalizing wearing and not wearing a mask is unconstitutional under the First and Fourteenth Amendments.

121.   And the Plaintiffs are thus entitled to a permanent injunction against all the Defendants to prevent the civil and criminal enforcement of Minnesota's combination of laws criminalizing wearing and not wearing a mask.

**Count 4: The Governor's Executive Order no. 20-81 requiring mask wearing violates the Minnesota Constitution's Article III non-delegation doctrine because it conflicts legislatively-enacted laws.**

122.   The Plaintiffs incorporate this complaint's previous paragraphs.

123.   The Governor's Executive Order no. 20-81 violates Minnesota's non-delegation doctrine because the Governor's executive orders are an exercise of pure legislative power effectively repealing legislatively-enacted laws.

124.    The Minnesota Supreme Court has also held that agency rules can not conflict with statutes:

> While 'administrative agencies may adopt regulations to implement or make specific the language of a statute, they cannot adopt a conflicting rule.'

*Hirsch v. Bartley-Lindsay Co.*, 537 NW 2d 480 (Minn: 1995).

125.    A Governor's executive orders cannot conflict with statutes without violating Minnesota Constitution's express separation-of-powers provisions.

**Minnesota's non-delegation doctrine prohibits delegations of pure legislative power to the Governor to conflict legislatively-enacted laws.**

126.    Throughout its history, the Minnesota Supreme Court has jealously guarded the constitutional division of powers. Justice Elliott, in *State v. Brill,* described at length the history of the doctrine of separation of powers with its limits on the executive and judiciary branches as well as the legislative branch:

> The tendency to sacrifice established principles of constitutional government in order to secure centralized control and high efficiency in administration may easily be carried so far as to endanger the very foundations upon which our system of government rests.
>
> * * *
>
> In speaking of the old Constitution of Virginia, Jefferson said: 'All the powers of government, legislative, executive, and judicial, result to the legislative body. The concentrating these in the same hands is the precise definition of a despotic government. It will be no alleviation that these powers will be exercised by a plurality of hands and not a single one.' Jefferson, Notes on Virginia, p. 195; Story, Const. Law, vol. 1, § 525.[1]

---

[1] *State v. Brill,* 111 N.W. 639, 640-41 (1907).

25

127.   The separation of powers doctrine is familiar to this Court, but bears repeating because of the significance of the doctrine's role in this controversy: "Under the Separation of Powers Clause, no branch can usurp or diminish the role of another branch."[2]

128.   The three departments of state government, the legislative, executive, and judicial, are independent of each other. Neither department can control, coerce, or restrain the action or non-action of either of the others in the exercise of any official power or duty conferred by the Constitution, or by valid law, involving the exercise of discretion.

129.   The Minnesota Constitution states in Article III that "[t]he powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise *any* of the powers properly belonging to either of the others except in the instances *expressly* provided in this constitution."[3]

130.   This is an express separation-of-powers article not found in the U.S. Constitution. Article III expressly bars any department from assuming or asserting any "inherent powers"— powers not "expressly" given—that properly belong to either of the others.

---

[2] *See* Minn. Const. art. III, § 1; *Brayton v. Pawlenty,* 768 N.W.2d 357, 365 (Minn. 2010).
[3] *Id.,* emphasis added.

131.    In short, no "department can control, coerce, or restrain the action or inaction of either of the others in the exercise of any official power or duty conferred by the Constitution."[4]

132.    Minnesota Supreme Court precedent has "recognized that where the constitution commits a matter to one branch of government, the constitution prohibits the other branches from ... interfering with the coordinate branch's exercise of its authority."[5]

133.    Arising from Article III is Minnesota's non-delegation doctrine. The state legislature cannot delegate pure legislative power to any government official— including the Governor.

134.    The Minnesota Supreme Court stated in *City of Richfield v. Local No. 1215, International Association of Fire Fighters*, a case where a party challenged the validity of a delegation of legislative authority:

> The non-delegation doctrine teaches that purely legislative power cannot be delegated. *Lee v. Delmont*, 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949). However, where a law embodies a reasonably clear policy or standard to guide and control administrative officers, so that the law takes effect by its own terms when the facts are ascertained by the officers and not according to their whim, then the delegation of power will be constitutional. 228 Minn. at 113, 36 N.W.2d at 538.

---

[4] *Id.*

[5] *Limmer*, 819 N.W.2d at 627-28 (Minn. 2012) *citing In re Civil Commitment of Giem,* 742 N.W.2d 422, 429 (Minn. 2007); *see also State ex rel. Birkeland v. Christianson,* 179 Minn. 337, 340, 229 N.W. 313, 314 (1930) (explaining that no branch of government "can control, coerce or restrain the action or non-action of either of the others in the exercise of any official power or duty conferred by the constitution").

276 N.W.2d 42, 45 (1979). *See also State v. King*, 257 N.W.2d 693 (Minn. 1977); *City of Minneapolis v. Krebes*, 303 Minn. 219, 226 N.W.2d 617 (1975); *Thomas v. Housing and Redevelopment Authority*, 234 Minn. 221, 48 N.W.2d 175 (1951).

135.    More recently, the Minnesota Court of Appeals, has confirmed the continued vitality of the non-delegation doctrine:

> The legislature "cannot delegate purely legislative power to any other body, person, board, or commission."

*Coalition of Greater Minnesota Cities v. Minnesota Pollution Control Agency*, 765 N.W.2d 159, 165 (Minn. App. 2009), *quoting Lee v. Delmont*, 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949) (citations omitted).

136.    In addition, in cases involving civil liberties, delegations of legislative power are particularly apt to be closely scrutinized and narrowly construed. *See, e.g., I.N.S. v. Chadha*, 462 U.S. 919 (U.S. 1983) (a deportable alien had standing to challenge validity of law due to legislative veto).

**The Governor's Executive Order No. 20-81 is unconstitutional as an exercise of pure legislative power conflicting with legislatively-enacted law.**

137.    The Governor's Executive Order No. 20-81, requiring mask wearing, issued under Minnesota Statutes § 12.31, subdivision 2, is unconstitutional because it is an exercise of pure legislative power conflicting with legislatively-enacted law.

138.    The Governor's executive orders exercise legislative power. Section 12.32 describes that the executive orders and rules promulgated by the Governor have the "full force and effect of law":

12.32 GOVERNOR'S ORDERS AND RULES, EFFECT. Orders and rules promulgated by the governor under authority of section 12.21, subdivision 3, clause (1), when approved by the Executive Council and filed in the Office of the Secretary of State, have, during a national security emergency, peacetime emergency, or energy supply emergency, the full force and effect of law. Rules and ordinances of any agency or political subdivision of the state inconsistent with the provisions of this chapter or with any order or rule having the force and effect of law issued under the authority of this chapter, is suspended during the period of time and to the extent that the emergency exists.

139.    But, section 12.32 limits the Governor's legal authority to suspending "rules and ordinances of any agency or political subdivision of the state" (county and local governments).

140.    The Governor is not given the legal authority to suspend state laws or to conflict with state laws. In order to amend or repeal a state law, the Governor has to work through the legislative law-making process, not issue executive orders conflicting with state law.

141.    Legislative power is exercised by the Governor when he restricts civil liberties by requiring mask wearing under threat of criminal prosecution.

142.    On July 22, 2020, Minnesota's Governor signed "Executive Order 20-81: Requiring Minnesotans to Wear a Face Covering in Certain Settings to Prevent the Spread of COVID-19." Executive Order No. 20-81, page 3, generally asserts: "Minnesotans must wear a face covering in indoor businesses and indoor public settings."

143.    Executive Order No. 20-81, pages 13 and 14, establish criminal enforcement provisions for not wearing a mask. For an individual, it is criminal petty misdemeanor not to be wearing a mask:

> Any individual [adult, non-student] who willfully violates this Executive Order is guilty of a petty misdemeanor and upon conviction must be punished by a fine not to exceed $100.

144.    For a business, it is a criminal misdemeanor not to be wearing a mask and requiring compliance:

> Any business owner, manager, or supervisor who fails to comply with this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000, or by imprisonment for not more than 90 days.

145.    Executive Order No. 20-81 conflicts with Minnesota Statutes § 609.735 which makes mask wearing a criminal act:

> "A person whose identity is concealed by the person in a public place by means of a … *mask*, or other disguise, unless based on religious beliefs, or incidental to amusement, entertainment, protection from weather, or medical treatment, is guilty of a *misdemeanor*."

Minnesota Statutes §609.735, Concealing Identity.  In Minnesota, wearing a mask in public is a crime.  But, Executive Order No. 20-81 makes it a crime not to wear a mask.

146.    To be sure, Minnesota Statutes § 609.735 does contain an exception for medical "treatment." But, under common definitions of "treatment," mask-wearing to prevent a contagious disease is not medical "treatment."

147. Thus, the Governor's Executive Order No. 20-81 violates the legislative

prerogative of making laws under the Minnesota Constitution, Article IV, section 22:

> Sec. 22. Majority vote of all members to pass a law. The style of all laws
> of this state shall be: "Be it enacted by the legislature of the state of
> Minnesota." No law shall be passed unless voted for by a majority of all
> the members elected to each house of the legislature, and the vote entered
> in the journal of each house.

A majority of the respective state legislative bodies never voted to pass the

Governor's Executive Order No. 20-81 and repeal Minnesota Statutes §609.735.

148. The Governor's Executive Order No. 20-81 also violates the

Presentment Clause of Minnesota Constitution, Article IV, section 23:

> Sec. 23. Approval of bills by governor; action on veto. Every bill passed
> in conformity to the rules of each house and the joint rules of the two
> houses shall be presented to the governor

The Governor's Executive Order No. 20-81 was not passed in conformity to the rules

of each house and the joint rules of the two houses and subsequently presented to the

Governor.

149. Importantly, the state legislature did not provide for judicial review of

the Governor's executive orders under Minn. Stat. § 14.44 which provides judicial

review of state agency rules. As the Minnesota Court of Appeals ruled on May 26,

2020, in a case brought by small businesses closed by the Governor's executive

orders:

> The [Emergency Executive Orders] were issued pursuant to the
> Governor's authority under the Minnesota Emergency Management Act
> of 1995, Minn. Stat. §§ 12.01-.61(2018). Petitioners assert that the EEOs

are statements of general applicability and future effect and are therefore subject to review under Minn. Stat. § 14.44. However, [Minnesota Administrative Procedures Act] expressly excepts from its application "emergency powers in sections 12.31 to 12.37." Minn. Stat. § 14.03, subd. 1. And, consistent with the exception in MAPA, Minn. Stat. § 12.21, subd. 3(a) authorizes the governor to "make, amend, and rescind the necessary orders and rules to carry out the provisions of this chapter…without complying with sections 14.001 to 14.69." Thus, the EEOs were neither required to be formally promulgated under MAPA nor were they so promulgated. Accordingly, the EEOs are not subject to review by this court under Minn. Stat. § 14.44.

*Free Minnesota Small Business Coalition, et al. v. Tim Walz, Governor of Minnesota,* Case No. A20-0641. Ex. 64 at 2-3.

150.    So, the Governor's executive orders which have the "full force and effect of law" are not subject to statutorily-provided review by the judicial department. The state legislature's failure to provide judicial oversight of the Governor's executive orders is another aspect of the Governor exercising pure legislative power.

151.    The Governor's executive orders promulgated under section 12.31 do not comply with the Minnesota Constitution, Article III, which states "No person…constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution."

152.    The Governor's executive orders exceed his legal authority by exercising pure legislative power.

153.    The Court should declare the Governor's Executive Order no. 20-81

requiring mask wearing as unconstitutional under the Minnesota Constitution and

enjoin its enforcement.

**Count 5: Minnesota Statutes § 12.31, subdivision 2, is unconstitutional because of Minnesota Constitution's Article III bans legislative veto provisions.**

154.    Minnesota Statutes § 12.31 is unconstitutional because it contains a

legislative veto and the unconstitutional provision cannot be severed.

**The Minnesota Constitution does not authorize the legislative veto in Minnesota Statutes § 12.31, subdivision 2.**

155.    The Minnesota Statutes § 12.31, applying to peacetime emergencies, is

unconstitutional because it has a provision unconstitutionally authorizing a legislative

veto on extension of peacetime emergencies beyond thirty days. Minnesota Statutes §

12.31, subdivision 2, provides that:

> (a)…A peacetime emergency must not be continued for more than five days unless extended by resolution of the Executive Council up to 30 days… (b) By majority vote of each house of the legislature, the legislature may terminate a peacetime emergency extending beyond 30 days. If the governor determines a need to extend the peacetime emergency declaration beyond 30 days and the legislature is not sitting in session, the governor must issue a call immediately convening both houses of the legislature.

And, Article III of the Minnesota Constitution bans legislative vetoes.

156.    The legislative veto is a feature of statutes enacted by a legislative body.

157.    A legislative veto is a statutory provision whereby the state legislature

passes a statute granting authority to the Governor to make or implement law and

reserves for itself the ability to override, through simple majority vote, individual actions taken by the Governor pursuant to that authority.

158.   Although there is not a Minnesota appellate case on point regarding the Minnesota Constitution and legislative vetoes, the U.S. Supreme Court has ruled under similar provisions in the U.S. Constitution that such a legislative veto is unconstitutional. The U.S. Supreme Court in *I.N.S. v. Chadha*, 462 U.S. 919 (U.S. 1983) held that a section of the Immigration and Nationality Act authorizing a legislative veto to invalidate decisions of the executive branch to allow a particular deportable alien to remain in the United States is unconstitutional, because action by a legislative body pursuant to that section is essentially legislative and thus subject to the constitutional requirements of passage by a majority of both Houses and presentation to the President.

159.   The facts surrounding the Governor's executive orders even make a stronger case than *Chadha* for a constitutional violation under the analogous separation-of-powers articles in the Minnesota Constitution. In *Chadha,* the statute provided the legislative veto under a duly-enacted law. Congress could veto executive action under that duly-enacted law. Whereas, with the Governor's executive orders, the Governor is making the so-called "duly-enacted" law, leaving the legislature with a legislative veto. Both are unconstitutional because the legislative veto violates the separation-of-powers articles in the respective constitutions.

160.    Specifically, the legislative veto of the Governor's executive orders provided in section 12.31, subdivision 2, violates the legislative prerogative of making laws under the Minnesota Constitution, Article IV, section 22:

> Sec. 22. Majority vote of all members to pass a law. The style of all laws of this state shall be: "Be it enacted by the legislature of the state of Minnesota." No law shall be passed unless voted for by a majority of all the members elected to each house of the legislature, and the vote entered in the journal of each house.

Instead of a majority of the legislature enacting the laws, the Governor is making the "duly-enacted" laws by his executive orders.

161.    The Governor's executive orders also violate the Presentment Clause of Minnesota Constitution, Article IV, section 23:

> Sec. 23. Approval of bills by governor; action on veto. Every bill passed in conformity to the rules of each house and the joint rules of the two houses shall be presented to the governor

Instead of the legislature presenting the passed bills to the Governor for signature, the Governor makes the so-called "duly-enacted" laws in the executive orders and presents them to the state legislature for a possible legislative veto.

162.    Constitutionally, the Governor has put the cart before the horse.  Under the Minnesota Constitution, the state legislature is to enact the bills and present them to the Governor to make law. Instead, in violation of the Minnesota Constitution, the Governor is making the laws by executive order and presenting them to the legislature for legislative veto.

**The unconstitutional legislative veto provision cannot be severed from the statute because of legislative intent.**

163.   Importantly, since the unconstitutional legislative veto provision of Minnesota Statutes § 12.31, subdivision 2, cannot be severed, all of the Governor's emergency peacetime powers are unconstitutional.

164.   Minnesota Statutes § 645.20 on construction of severable provisions provides in relevant part:

> If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

The Minnesota Supreme Court has held that if the legislature would not have enacted the remaining provisions without those that are to be severed, the court may not sever the unconstitutional provision from the statute and leave the remaining language intact. *See Deegan v. State*, 711 N.W.2d 89, 98 (Minn. 2006) *State v. Shattuck,* 704 N.W.2d 131, 143 (Minn. 2005); *Chapman v. Comm'r of Revenue,* 651 N.W.2d 825, 836 (Minn.2002).

165.   In this case, the legislative veto provision cannot be severed because of legislative intent.

166.   First, Minnesota Statutes, chapter 12 does not have a provision requiring severability.

167.    Second, the state legislature did not have the intent to give the Governor exclusive authority to make law through executive orders without legislative approval—as evidenced by the statutory provision for legislative veto.

168.    The legislature enacted the legislative veto to have a way to check the Governor's executive powers.

169.    The legislature would never have given the Governor these broad emergency powers without some legislative check.

170.    So, the legislative intent precludes severing the unconstitutional legislative veto provision from the rest of the statute.

171.    Accordingly, the Court cannot sever the unconstitutional legislative veto; it must hold that the entirety of section 12.31, subdivision 2 is unconstitutional.

172.    The Court should declare the Governor's Executive Order no. 20-81 requiring mask wearing as unconstitutional and enjoin its enforcement.

**Count 6: Plaintiffs are entitled to injunctive relief due to the irreparable harm regarding the violation of constitutional protections.**

173.    The Plaintiffs incorporate this complaint's previous paragraphs.

174.    The Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting the Defendants from enforcing Minnesota's combination of laws criminalizing both wearing and not wearing a mask.

175.    An injunction will terminate, and afford relief from, the threat, uncertainty, and insecurity, of Minnesota's combination of laws criminalizing both wearing and not wearing a mask.

176.    Minnesota's combination of laws criminalizing both wearing and not wearing a mask provides for criminal prosecution and penalties for political speech, creating a chilling effect on the Plaintiffs'—and others'—speech.

177.    The Plaintiffs are likely to prevail on this action's merits.

178.    The Plaintiffs will suffer irreparable harm if the Defendants are not enjoined from enforcing Minnesota's combination of laws criminalizing both wearing and not wearing a mask because the Plaintiffs will lose opportunities to engage in political activities, including voting, protected by the First Amendment.

179.    The Defendants will not suffer any harm if they are prevented from enforcing Minnesota's combination of laws criminalizing both wearing and not wearing a mask.

180.    Granting injunctive relief is in the public interest because doing so protects everybody's free-speech rights.

**Count 7: Constitutional claims under 42 U.S.C. § 1983 entitle the Plaintiffs to attorneys' fees and costs.**

181.    The Plaintiffs incorporate this complaint's previous paragraphs.

182.    The Defendants are responsible for enforcing Minnesota's combination of laws criminalizing both wearing and not wearing a mask.

183.    Because enforcement or threatened enforcement of Minnesota's combination of laws criminalizing both wearing and not wearing a mask violates, under color of state law, the Plaintiffs' First Amendment rights, the Plaintiffs are entitled to attorneys' fees and costs incurred in this suit. 42 U.S.C. §§ 1983, 1988.

## Prayer for Relief

Therefore, the Plaintiffs respectfully ask that this Court:

1.    Declare Minnesota's combination of laws criminalizing both wearing and not wearing a mask to be facially, and as applied to the facts of this case, unconstitutional under the First and Fourteenth Amendments;

2.    Declaring the Governor's Executive Order No. 20-81 as a violation of the Minnesota Constitution;

3.    Grant a preliminary and permanent injunction enjoining the Defendants from enforcing the Minnesota's combination of laws criminalizing both wearing and not wearing a mask;

4.    Award the Plaintiffs all costs, expenses, and expert witness fees allowed by law;

5.    Award the Plaintiffs attorneys' fees and costs allowed under 42 U.S.C. § 1988;

6.    Award the Plaintiffs attorneys' fees and costs allowed under Minn. Stat. §§ 15.471–15.474; and

7.    Award the Plaintiffs such other and further relief as this Court deems

just.


Dated: August 4, 2020.                          /s/Erick G. Kaardal
                                                Erick G. Kaardal, 229647
                                                Mohrman, Kaardal & Erickson, P.A.
                                                150 South Fifth Street, Suite 3100
                                                Minneapolis, MN 55402
                                                Telephone:   (612) 341-1074
                                                Facsimile:   (612) 341-1076
                                                Email:       kaardal@mklaw.com
                                                Attorneys for the Plaintiffs