## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Voters Alliance, Andrew Cilek, Kim Crockett, Craig Anderson, Yvonne Hundshamer, Craig Jones, | Case No. 20-CV-01688 PJS/ECW |
| Plaintiffs, | |
| v. | |
| Tim Walz, in his official capacity as Governor of Minnesota, or his successor; Steve Simon, in his official capacity as Secretary of State of Minnesota, or his successor, Mark V. Chapin, in his official capacity as Hennepin County Auditor, or his successor, Christoper A. Samuel, in his official capacity as Ramsey County Auditor, or his successor, Keith Ellison, in his official capacity as Attorney General of Minnesota, or his successor, Mike Freeman, in his official capacity as Hennepin County Attorney, or his successor, John Choi, in his official capacity as Ramsey County Attorney, or his successor, | **Amended Complaint for Declaratory and Injunctive Relief** |
| Defendants. | |

The plaintiffs allege the following amended complaint.

### Introduction

1.     This complaint is a First Amendment case requiring interpretation of both federal and state legal texts to determine whether the plaintiffs' First Amendment rights were violated.   Plaintiffs challenge Minnesota's "policy"--a law, an executive order and a memorandum—criminalizing wearing a mask and criminalizing not wearing a mask in public places and polling places as unconstitutional.

2.      Minnesota's policy on masks includes an executive order, a memorandum and a statute.  First, Minnesota has a statute which criminalizes wearing a mask in public places. Minn. Stat. § 609.735.  Second, the Secretary of State's memorandum, also issued on July 22, has threatened prosecution for wearing a mask in polling places. Third, the Governor's Executive Order 20-81, issued on July 22, has criminalized wearing a mask in public place.

3.      The plaintiffs want the First Amendment freedom to choose whether to wear a mask, even to politically protest.

4.      At the same time, the plaintiffs have a right to protect themselves by wearing a mask and a right to politically protest the government's pandemic response by not wearing a mask.

5.      Minnesota's policy, which the defendants enforce, criminalizes plaintiffs for both wearing a mask and not wearing a mask.

6.      Accordingly, the plaintiffs claim Minnesota's policy violates their First Amendment rights in public places and in the polling places. The defendants violate two different First Amendment tests.  For public places, the defendants' policy is unconstitutional by failing to be narrowly tailored to meet the government's compelling interests.  For non-public forums like polling places, the defendants' policy is unconstitutional by failing to be capable of a reasoned application.  All of Minnesota's policy regarding masks is unconstitutional.

7.      But, even before those tests are applied, the Governor's executive order and the Secretary of State's memorandum are legally unauthorized, null and void.  First, the executive order's and memorandum's mask mandate for polling places is legally

2

unauthorized because the Elections Clause of Article I, Section 4 of the U.S. Constitution requires that the "state legislature" determine  by law the time, place and manner of elections for federal elected offices—not the Governor and Secretary of State.  Second, the executive order's and memorandum's mask mandate in both public places and polling places, and Minnesota Statutes § 12.31 upon which they rely for authority, violate Article III of the Minnesota Constitution as violative of its non-delegation doctrine and violative of its ban on non-severable legislative vetoes.  Third, the executive order's and memorandum's mask mandate in both public places and polling places, in light of Minnesota Statutes § 12.32 limiting the effect of the Governor's executive orders to suspending agency rules and local ordinances, is superseded by Minnesota Statutes § 609.735 which criminalizes wearing a mask.  The Court conducting this "ultra vires" review of the state's action is required under the Fourteenth Amendment which incorporates the First Amendment against the states.

## Jurisdiction and Venue

8.      In bringing this case, the Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 2201 (declaratory-judgment jurisdiction), and 42 USC §§ 1983, 1988 (civil-rights statutes).

9.      Venue is proper in this Court under 28 U.S.C. § 1391 because all the defendants are Minnesota public officials and reside within this district, and because the events or omissions giving rise to the claims presented occurred within this district.

## Parties

### A.  The Plaintiffs

10.     The Plaintiffs are Minnesota political participants and a Minnesota nonprofit corporation.

### *Plaintiff Andrew Cilek*

11.     Plaintiff Andrew Cilek is a voter, resident and taxpayer in Minnesota. He resides in Hennepin County.

### *Plaintiff Kim Crockett*

5.     Plaintiff Kim Crockett is a voter, resident and taxpayer in Minnesota. He resides in Hennepin County.

### *Plaintiff Craig Anderson*

6.     Plaintiff Craig Anderson is a voter, resident and taxpayer in Minnesota. He resides in Ramsey County.

### *Plaintiff Yvonne Hundshamer*

7.     Plaintiff Yvonne Hundshamer is a voter, resident and taxpayer in Minnesota. She resides in Ramsey County.

### *Plaintiff Craig Jones*

8.     Plaintiff Craig Jones is a voter, resident and taxpayer in Minnesota. He resides in Ramsey County.

### *Plaintiff Minnesota Voters Alliance*

9.     Minnesota Voters Alliance (MVA) is a Minnesota nonprofit corporation with members and supporters who seek to ensure, as part of their collective objectives, public

confidence in the integrity of Minnesota's elections, in election results and election systems, processes, procedures, and enforcement, and that public officials act in accordance with the law in exercising their obligations to the people of the State of Minnesota. Its membership includes individual registered voters and taxpayers. Andy Cilek is MVA's President. The rest of the plaintiffs are MVA members or supporters.

## B. The Defendants

10.     The Defendants are public officials in Minnesota.

**Defendant Tim Walz**

11.     Defendant Tim Walz, Minnesota's Governor, is sued in his official capacity.

**Defendant Steve Simon**

12.     Defendant Steve Simon, Minnesota's Secretary of State, is sued in his official capacity.

**Defendant Mark V. Chapin**

13.     Defendant Mark V. Chapin, Hennepin County Auditor, is sued in his official capacity.

**Defendant Christopher A. Samuel**

14.     Defendant Christopher A. Samuel, Ramsey County Auditor, is sued in his official capacity.

**Defendant Keith Ellison**

15.     Defendant Keith Ellison, Minnesota's Attorney General, is sued in his official capacity.

**Defendant Mike Freeman**

16.     Defendant Mike Freeman, the Hennepin County Attorney, is sued in his official capacity.

***Defendant John Choi.***

17.     Defendant John Choi, the Ramsey County Attorney, is sued in his official capacity.

## Standing

18.     An actual controversy exists between the parties, and the plaintiffs have suffered an injury-in-fact that is directly traceable to the defendants. 28 U.S.C. § 2201. Specifically, the plaintiffs have engaged, or propose to engage, in campaigning and voting activities either wearing a face mask or not wearing a face mask. Under Minnesota's policy, both wearing a face mask and not wearing a face mask are criminal activities. The plaintiffs fear that, as a result of the plaintiffs' speech, expressive and associational activities in public places and at polling places, including in-person voting, at least one of the defendants will initiate a complaint or prosecute at least one of the plaintiffs for either the plaintiff wearing a mask or not wearing a face mask. Therefore, the plaintiffs and each of them have had their First Amendment political activities deterred and chilled.

19.     The impending threatened injury to the plaintiffs is real and concrete.

20.     This Court's favorable decision will redress the plaintiffs' injuries and allow them to exercise their First Amendment rights without fear of being sued or prosecuted.

## Statement of Facts

**Minnesota Voters Alliance, its members and supporters want election integrity.**

21.     Minnesota Voters Alliance (MVA) is a nonprofit organization with members and supporters, including the individual plaintiffs.

22.     MVA's interest is public in nature.

23.     MVA seeks to ensure, as part of their collective objectives, public confidence in the integrity of Minnesota's elections, in election results and election systems, processes, procedures, and enforcement, and that public officials act in accordance with the law in exercising their obligations to the people of the State of Minnesota.

24.     Thus, the MVA is an association of people organized in Minnesota to promote election integrity. It uses private and public resources as a catalyst to investigate complaints arising from Minnesota's elections. The complaints show where the government is acting contrary to the best interests of the people. The MVA has sought to ensure that Minnesota's elections comply with the law.

25.     The MVA's expectations of the public officials, as embraced by others, is for the public officials to act as advocates for election integrity. When public officials violate election integrity, MVA assists the public in determining whether litigation is warranted.

26.     If litigation is warranted, as in this case, MVA brings to the court resources to present a unique and factual perspective in support of election integrity in Minnesota

**Individual plaintiffs want to choose whether to wear a mask or not wear a mask in public places and in polling places.**

27.     During elections and election campaigns, the individual plaintiffs, in public places, engage in express political advocacy. Their political advocacy includes: supporting

candidates for office, including campaigning; engaging in debates about candidates; engaging in political debates; speaking at events; inviting others to events; holding events; writing letters or editorials; speaking with news reporters; speaking with friends, family members, strangers, other candidates, office holders, and governmental and nongovernmental officials regarding political philosophies, beliefs, positions, opinions, and interpretations; and encouraging community members to support their positions regardless of their personal ideology. Such political speech is at the core of First Amendment protection.

28.     The individual plaintiffs also engage in in-person voting at primary elections and general elections.  The plaintiffs prefer in-person voting over absentee voting because it is more secure.

29.     The individual plaintiffs engage in First Amendment protected activities in public places and in polling places.

30.     The individual plaintiffs want to choose whether to wear a mask or not wear a mask in public places and in polling places.

31.     The individual plaintiffs want to choose whether to wear a mask or not wear a mask in public protest of Minnesota's policy.

**Four individual plaintiffs did not participate in public primary campaigning activities and did not participate in in-person voting in the August 11 primary due to Minnesota's policy on masks.**

32.     Four individual plaintiffs—Anderson, Crockett, Hundshamer and Jones— wanted to participate in primary campaigns in public places prior to the August 11 primary and to vote in-person on August 11.

33.     The four individual plaintiffs did not participate in primary campaigns in public places prior to the August 11 primary and did not vote in-person on August 11.

34.     This meant that the four plaintiffs did not vote in the primary at all because of the threat of prosecution.

35.     Minnesota's policy on masking suppressed voter turnout for the primary elections.

**Similarly, the individual plaintiffs, due to the chilling effects of Minnesota's policy on masks, will not participate in general election campaigning activities in public places, will not participate in in-person voting in the November 3 general election, and will not attend Minnesota Voters Alliance public events.**

36.     The individual plaintiffs want to participate in general election activities.

37.     They want to vote in-person at the November 3, 2020 election and beyond.

38.     The individual plaintiffs will not be voting absentee in the November 3, 2020 general election and beyond. The individual voters do not think it's as reliable as in-person voting.

39.     The individual plaintiffs have read Minnesota Statutes section 609.735 which criminalizes wearing a mask.

40.     The individual plaintiffs have read Emergency Executive Order No. 20-81 which criminalizes not wearing a mask.

41.     The individual plaintiffs understand that the Secretary of State's July 22, 2020 instructions to precinct election judges encourages the election judges to write down names for prosecution for violating Minnesota's laws on masks.

42.     Because of Minnesota's policy criminalizing both wearing and not wearing a mask, the individual plaintiffs will not be politically participating in the election campaigns in public places and will not be voting in person at the polling places on November 3, 2020.

43.     For the same reason, they will not be attending Minnesota Voters Alliance's public events.

44.     The individual plaintiffs' political participation in the election campaigns, in in-person general election voting and in attending Minnesota Voters Alliance's public events is chilled by Minnesota's policy on masks.

45.     If the Court does not grant an injunction, the individual plaintiffs will not be politically participating in the election campaign, will not be voting in person at the general election on November 3, 2020 as they desire, and will not be attending Minnesota Voters Alliance's public events.

**Minnesota's policy both criminalizes wearing a mask and criminalizes not wearing a mask in public places and polling places.**

46.     Defendants, collectively, have taken steps towards criminalizing or prosecuting plaintiffs when wearing a mask in a public place, including the polling place, and criminalizing or prosecuting plaintiffs when not wearing a mask in public places, including the polling place.

47.     Minnesota criminalizing both wearing and not wearing a mask in public places, including the polling place, suppresses political participation and voter attendance.

48.     A prominent criminal defense attorney Thomas C. Gallagher in a blog post states that Minnesota criminalizes both wearing and not wearing a mask in public places. Ex. 4.

49.     County Attorney Matthew Franzese by declaration states that Minnesota criminalizes both wearing and not wearing a mask in public places.   Ex. 5.

Since Minnesota criminalizes both wearing and not wearing a mask in public places, the plaintiffs will not participate in First Amendment protected activities—including in-person voting for the November 3 general election and beyond.

50.     On March 13, 2020, the Governor signed "Executive Order 20-01: Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19"

51.     Since then, the Governor has issued eighty-two executive orders, Nos. 20-01 through 20-84.

52.     The Governor has claimed legal authority to issue these executive orders pursuant to Minn. Stat. § 12.31, Subd. 2.

53.     The Governor has issued subsequent executive orders extending the peacetime emergency for additional day thirty periods with Executive Order 20-35 on April 13, 2020, Executive Order 20-53 on May 13, 2020, Executive Order 20-75 on June 12, 2020, Executive Order 20-78 on July 13, 2020, and Executive Order 20-83 on August 12, 2020.

54.     Each of these executive orders extending the peacetime emergency noted that the governor's asserted authority could only be rescinded by "a majority vote of each house of the legislature pursuant to Minnesota Statute 2019, section 12.31, subdivision 2(b)" or something similar.

11

**Executive Order 20-81 makes it a crime not to wear a mask.**

55.     On July 22, 2020, Defendant Walz signed "Executive Order 20-81: Requiring Minnesotans to Wear a Face Covering in Certain Settings to Prevent the Spread of COVID-19." Ex. 1.

56.     Executive Order No. 20-81, page 3, generally asserts: "Minnesotans must wear a face covering in indoor businesses and indoor public settings, including when waiting outdoors to enter an indoor business or public indoor space."

57.     Executive Order No. 20-81, pages 13 and 14, establishes criminal enforcement provisions for not wearing a mask, to-wit:

a.     For an individual, it is criminal petty misdemeanor not to be wearing a mask: "Any individual [adult, non-student] who willfully violates this Executive Order is guilty of a petty misdemeanor and upon conviction must be punished by a fine not to exceed $100."

b.     For a business, it is a criminal misdemeanor not to be wearing a mask and requiring compliance: "Any business owner, manager, or supervisor who fails to comply with this Executive Order is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000, or by imprisonment for not more than 90 days."

**Minnesota Statutes § 609.735 makes it a crime to wear a mask.**

58.     However, Minnesota Statutes § 609.735 (Ex. 3) makes wearing a mask in a public place a criminal act, punishable by up to 90 days imprisonment and/or a $1000 fine.

59.     The only exceptions to this prohibition is if wearing a mask is "based on religious beliefs, or incidental to amusement, entertainment, protection from weather, or medical treatment."

60.     None of the exceptions under Minnesota Statutes § 609.735 apply for plaintiffs.

61.    Executive Order 20-81 is legally inaccurate when it states that "(w)earing a face covering in compliance with this Executive Order or local ordinances, rules, or orders is not a violation of Minnesota Statutes 2019, section 609.735." Ex. 1.

62.    Executive Order 20-81 does not preclude enforcement of Minnesota Statutes § 609.735.

**Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi are to prosecute plaintiffs for wearing a mask and prosecute plaintiffs for not wearing a mask in public places and in polling places.**

63.    Under Minnesota's criminal code, the Attorney General and county attorneys prosecute crimes.

64.    Minnesota Statutes § 609.735 makes wearing a mask in a public place a criminal act.

65.    Under Minnesota Statutes § 609.735, Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi prosecute plaintiffs for wearing a mask and not for wearing a mask.

66.    The Governor's Executive Order no. 20-81 makes not wearing a mask in a public place a criminal act.

67.    Under Governor's Executive Order no. 20-81, Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi prosecute plaintiffs for not for wearing a mask.

68.    So, plaintiffs when engaged in political participation in public places are to be criminally prosecuted by Defendants Attorney General Ellison, Hennepin County Attorney Freeman and Ramsey County Attorney Choi for wearing a mask and for not wearing mask.

69.     Either way, the plaintiffs get prosecuted.

**Secretary of State Simon, Hennepin County Auditor Chapin and Ramsey County Auditor Samuel are enforcing a policy to wear a mask in the polling places.**

70.     Defendant Secretary of State Simon in his policy implementing the mask mandate dated July 22, 2020 (Ex. 2), requires county auditors and election officials to recommend, encourage and enforce upon all persons in the polling place the Executive Order No. 20-81 mask mandate—under threat of prosecution:

> If the voter insists on voting in the polling place without a face covering, record any violation of the face cover order…Record the name and addresses of a voter from the polling place roster in the incident log along with a notation that the voter refused to comply with the facial covering executive order…

Ex. 2 at 2.

71.     Under Secretary of State Simon's policy, County Auditor Chapin and Ramsey County Auditor Samuel enforce a policy upon voters to wear a mask in the polling place—under threat of prosecution under Executive Order No. 20-81.

72.     But, under Minnesota Statutes § 609.735, the same people that Defendants Simon, Chapin and Samuel are recommending, encouraging and enforcing to wear a mask are committing a crime by wearing the mask under Minnesota Statutes § 609.735.

## Claims

**Count 1: Minnesota's policy regarding mask wearing in public places violates the plaintiffs' First Amendment rights by failing strict scrutiny.**

73.     The Plaintiffs incorporate this complaint's previous paragraphs.

74.     Political participation in public places is core political speech that is constitutionally protected under the First Amendment's Free Speech Clause, which applies to the states through the Fourteenth Amendment.

75.     A law that restricts core political speech—such as restricting political participants access to public places based on what they wear—is content-based, is subject to strict scrutiny and is unconstitutional unless the law is narrowly tailored to serve a compelling state interest. *E.g.*, *281 Care Comm.*, 766 F.3d at 784–85.

76.     Defendants, collectively, have taken steps towards criminalizing or prosecuting plaintiffs when wearing a mask in a public place and criminalizing or prosecuting plaintiffs when not wearing a mask in a public place.

77.     Minnesota's policy in public places suppresses plaintiffs' political participation.

78.     Because of Minnesota's policy, the plaintiffs will not participate in First Amendment protected activities in public places.

79.     Minnesota Statutes § 609.735 makes wearing a mask in a public place a criminal act.

80.     The Governor's Executive Order no. 20-81 and the Secretary of State's July 22 memorandum makes not wearing a mask in public places a criminal act.

81.     The Governor's Executive Order no. 20-81 and the Secretary of State's July 22 memorandum are legally null and void because they violate the Elections Clause of the federal constitution.

82.     The Elections Clause is in Article I, section 4 of the U.S. Constitution.

83.     The Elections Clause states:

> The Times, Places and Manner of holding Elections for Senators and Representatives**,** shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

84.    Under the Elections Clause, the state legislature may determine the "time, place and manner: for selection of U.S. Senators and U.S. Representatives subject to Congressional acts.

85.    First, the Governor's Executive Order 20-81 and the Secretary of State's July 22 memorandum violate the U.S. Constitution's Elections Clause because they were not enacted by the state legislature—a requirement under the Elections Clause.

86.    Second, the Governor's Executive Order 20-81 and the Secretary of State's July 22 memorandum violate the U.S. Constitution's Elections Clause because the Governor's executive orders are an exercise of unconstitutional pure legislative power effectively repealing legislatively-enacted laws—a result not allowed by Article III of the Minnesota Constitution.

87.    The Court conducting this "ultra vires" review of the state's action is required under the Fourteenth Amendment which incorporates the First Amendment against the states.

88.    The Minnesota Supreme Court has also held that agency rules can not conflict with statutes:

> While 'administrative agencies may adopt regulations to implement or make specific the language of a statute, they cannot adopt a conflicting rule.'

*Hirsch v. Bartley-Lindsay Co.*, 537 NW 2d 480 (Minn: 1995).

89.     Thus, a Governor's executive orders and Secretary of State's memorandum cannot conflict with statutes without violating Minnesota Constitution's express separation-of-powers provisions—as has occurred here with Minnesota Statutes § 609.735—which then in turn is a violation of the Elections Clause.

90.     Third, the Governor's Executive Order 20-81 and the Secretary of State's July 22 memorandum violate the U.S. Constitution's Elections Clause because they are based on a statute, Minnesota Statutes § 12.31, with a legislative veto, which is unconstitutional under Article III of the Minnesota Constitution.

91.     The Court conducting this "ultra vires" review of the state's action is required under the Fourteenth Amendment which incorporates the First Amendment against the states.

92.     The Minnesota Statutes § 12.31, applying to peacetime emergencies, is unconstitutional because it has a provision unconstitutionally authorizing a legislative veto on extension of peacetime emergencies beyond thirty days. Minnesota Statutes § 12.31, subdivision 2, provides that:

> (a)…A peacetime emergency must not be continued for more than five days unless extended by resolution of the Executive Council up to 30 days… (b) By majority vote of each house of the legislature, the legislature may terminate a peacetime emergency extending beyond 30 days. If the governor determines a need to extend the peacetime emergency declaration beyond 30 days and the legislature is not sitting in session, the governor must issue a call immediately convening both houses of the legislature.

93.     The unconstitutional legislative veto in Minnesota Statutes § 12.31 cannot be severed because it was not the legislative intent to allow the executive branch to exercise peacetime emergency powers without legislative oversight.

17

94.     The Governor's executive orders and the Secretary of State's memorandum cannot be based on a statute with a non-severable legislative veto without violating Minnesota Constitution's express separation-of-powers provisions—which then in turn is a violation of the Elections Clause.

95.     Minnesota's policy regarding masks in public places does not serve a compelling state interest.

96.     Minnesota's policy regarding masks in public places is not narrowly tailored.

97.     On the contrary, Minnesota's policy regarding masks in public places is overbroad.

98.     Minnesota's policy is overbroad because the government can only criminalize one: wearing a mask or not wearing a mask.  When it criminalizes both, it is making everyone a criminal because they are either wearing a mask or not wearing a mask.

99.     Minnesota's policy regarding masks in public places is overbroad because they unnecessarily ban, deter, and chill constitutionally protected political activities in public places.

100.     Minnesota has less restrictive means of addressing the pandemic. Minnesota can choose to criminalize not wearing a mask or criminalize wearing a mask. But, it can't constitutionally do both without violating the First Amendment.

101.     The plaintiffs' political participation in public places is threatened by prosecutions under Minnesota's policy in public places, campaigning and at Minnesota Voters Alliance events, and in polling places.

102.    One Minnesota County Attorney has stated that Minnesota laws authorize prosecution for both wearing a mask and not wearing a mask in public places. Ex. 5.

103.    Further, as with other criminal laws, wrongful convictions are possible. Minnesota's policy criminalizing wearing and not wearing a mask in public places creates a possibility that an innocent person will be fined and jailed, either because of an incorrect determination of the facts or an incorrect determination of the policy criminalizing both wearing and not wearing a mask. *See* Minn. Stat. § 609.03(3) (providing for a jail sentence or a fine as the punishment for a misdemeanor).

104.    Furthermore, a person prosecuted for violating Minnesota's policy in public places bears the cost of defending against the prosecution even if the criminal complaint is dismissed or the person is acquitted.

105.    The risk of the expense of defending oneself is enough to chill protected speech.

106.    Prosecution under Minnesota's policy for public places is a realistic danger that significantly compromises the ability of Minnesotans to politically participate in public places.

107.    That danger risks chilling the Plaintiffs' and others' constitutionally protected political speech, even if nobody is ever prosecuted for violating the section

108.    Minnesota's policy regarding masks in public places restricts, chills, or bans the Plaintiffs' First Amendment activities in public places.

109.    Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

110.    The plaintiffs are entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's policy regarding masks in public places is unconstitutional under the First and Fourteenth Amendments.

111.    A declaratory judgment will serve a useful purpose in settling this complaint's constitutional challenges to Minnesota's policy regarding masks in public places.

112.    A declaratory judgment will terminate, and afford relief from, the threat, uncertainty, and insecurity of Minnesota's policy regarding masks in public places.

113.    The plaintiffs are further entitled to a permanent injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's policy regarding masks in public places.

114.    The defendants' violations of the plaintiffs' constitutional rights have occurred and this Court should grant all relief available under 28 U.S.C. § 1983.

**Count 2: Minnesota's policy regarding mask wearing at the polling places violates the First Amendment because it is "not capable of reasoned application."**

115.    The Plaintiffs incorporate this complaint's previous paragraphs.

116.    Political participation at the polling place is considered a non-public forum. Such political participation is constitutionally protected under the First Amendment's Free Speech Clause, which applies to the states through the Fourteenth Amendment. But, strict scrutiny does not apply.

117.    In *Minnesota Voters Alliance v. Mansky*, 138 S.Ct. 1876 (2018), the U.S. Supreme Court held that Minnesota's political apparel ban restricted a form of expression protected by the First Amendment and that a polling place in Minnesota qualifies as a non-public forum for First Amendment purposes.

118.    The U.S. Supreme Court in *Mansky* acknowledged that Minnesota's political apparel ban pursued permissible objective of setting polling place aside as island of calm in which voters could peacefully contemplate their choices, but Minnesota's political apparel ban violated the Free Speech Clause because it was "not capable of reasoned application." *Id.*

119.    Thus, Minnesota's laws affecting political attendance at polling places are unconstitutional if "not capable of reasoned application."

120.    Defendants, collectively, have taken steps towards criminalizing or prosecuting plaintiffs when wearing a mask in a polling place and criminalizing or prosecuting plaintiffs when not wearing a mask in a polling place,.

121.    A polling place is a public place for purposes of Minnesota Statutes § 609.735.

122.    Minnesota's policy criminalizing both wearing and not wearing a mask in polling places suppresses plaintiffs' political attendance in polling places to vote.

123.    Because of Minnesota's policy in polling places, the plaintiffs will not participate in First Amendment protected attendance at polling places for in-person voting.

124.    The Governor's Executive Order no. 20-81 and the Secretary of State's July 22 memorandum are legally null and void because they violate the Elections Clause of the federal constitution as explained above in Count I.

125.   Minnesota Statutes § 609.735 makes wearing a mask in a polling place a criminal act.

126.   The Governor's Executive Order no. 20-81 makes not wearing a mask in a polling place a criminal act.

127.   The Secretary of State's July 22 memorandum makes not wearing a mask in a polling place a criminal act.

128.   Minnesota's policy is "not capable of reasoned application" at the polling place.

129.   Minnesota's policy provides unbridled discretion to election judges and defendants to determine who to prosecute for wearing a mask and who to prosecute for not wearing a mask.

130.   Minnesota's policy is unconstitutional because it unnecessarily bans, deters, and chills constitutionally protected attendance at polling places to vote.

131.   Minnesota has less restrictive means of addressing the pandemic. Minnesota, in order to fight the pandemic, can choose to criminalize not wearing a mask at the polling place or criminalize wearing a mask at the polling places. But, it can't do both without violating the First Amendment.

132.   The Plaintiffs' political attendance at polling places is threatened by prosecutions under Minnesota's policy.

133.   And, as with other criminal laws, wrongful convictions are possible.

134.   Minnesota's policy creates a possibility that an innocent person will be fined and jailed, either because of an incorrect determination of the facts or an incorrect

determination of the policy criminalizing both wearing and not wearing a mask. *See* Minn. Stat. § 609.03(3) (providing for a jail sentence or a fine as the punishment for a misdemeanor).

135.    Furthermore, a person prosecuted for violating Minnesota's policy at polling places bears the cost of defending against the prosecution even if the criminal complaint is dismissed or the person is acquitted.

136.    The risk of the expense of defending oneself is enough to chill attendance at polling places to vote.

137.    Prosecution under Minnesota's policy at polling places is a realistic danger that significantly compromises the ability of Minnesotans to attend polling places to vote.

138.    That danger risks chilling the plaintiffs' and others' constitutionally protected attendance at polling places, even if nobody is ever prosecuted for violating the section.

139.    Minnesota's policy at polling places has restricted, chilled, or banned the Plaintiffs' First Amendment protected attendance at polling places for in-person voting.

140.    Under 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

141.    The plaintiffs are entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's policy at polling places is unconstitutional under the First and Fourteenth Amendments.

142.    A declaratory judgment will serve a useful purpose in settling this complaint's constitutional challenges to Minnesota's policy at polling places.

143.   A declaratory judgment will terminate, and afford relief from, the threat, uncertainty, and insecurity of Minnesota's policy at polling places.

144.   The plaintiffs are further entitled to a permanent injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's policy at polling places.

145.   The defendants' violations of the plaintiffs' constitutional rights have occurred and this Court should grant all relief available under 28 U.S.C. § 1983.

**Count 3: Minnesota's policy violates the plaintiffs' First Amendment expressive association rights.**

146.   The Plaintiffs incorporate this complaint's previous paragraphs.

147.   The First Amendment's guarantee of freedom of speech and other enumerated freedoms includes a right to expressive association: "'implicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "'[I]ntrusion into the internal structure or affairs of an association'" can violate the right to expressive association. *Id.* at 648 (quoting *United States Jaycees*, 530 U.S. at 623).

148.   A law burdening expressive association is subject to strict scrutiny. *See, e.g.*, *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984); *Dale*, 530 U.S. at 680 (Stevens, J., dissenting) (citing *United States Jaycees*, 468 U.S. at 623) (dissenting from application of the expressive-association doctrine, but conceding that a law burdening the right to expressive association must be the least restrictive means of achieving a compelling state interest).

24

149.   Minnesota's policy criminalizing wearing and not wearing a mask chills plaintiffs' expressive associational activities in public places.

150.   Minnesota's policy criminalizing wearing and not wearing a mask makes any participation in expressive associational activities in a public place risky.

151.   Minnesota's policy burden individual plaintiffs' ability to expressively associate in public places.

152.   Minnesota's policy burden Minnesota Voter Alliance's ability to expressively associate in public places.

153.   Minnesota's policy thus burdens Minnesota Voter Alliance's, its members' and its supporters' ability to advance their objectives through expressive association.

154.   Minnesota's policy's burdens on the plaintiffs' rights to expressive association and free speech are especially grave because they need to meet in public places to be effective political organizations.

155.   Minnesota's policy is thus subject to strict scrutiny as a burden on the right to expressive association.

156.   The Governor's Executive Order no. 20-81 and the Secretary of State's July 22 memorandum are legally null and void because they violate the Elections Clause of the federal constitution as explained above in Count I.

157.   Minnesota's policy unconstitutionally burdens the right to expressive association because they are not narrowly tailored to meet a compelling state interest.

158.    The Plaintiffs are thus entitled to a declaration under 28 U.S.C. § 2201(a) that Minnesota's policy criminalizing wearing and not wearing a mask is unconstitutional under the First and Fourteenth Amendments.

159.    And the Plaintiffs are thus entitled to an injunction against all the defendants to prevent the civil and criminal enforcement of Minnesota's policy criminalizing wearing and not wearing a mask.

**Plaintiffs are entitled to injunctive relief due to the irreparable harm regarding the violation of constitutional protections.**

160.    The plaintiffs incorporate this complaint's previous paragraphs.

161.    The plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting the defendants from enforcing Minnesota's policy criminalizing both wearing and not wearing a mask.

162.    An injunction will terminate, and afford relief from, the threat, uncertainty, and insecurity, of Minnesota's policy criminalizing both wearing and not wearing a mask.

163.    Minnesota's policy criminalizing both wearing and not wearing a mask provides for criminal prosecution and penalties for political speech, creating a chilling effect on the plaintiffs'—and others'—speech.

164.    The plaintiffs are likely to prevail on this action's merits.

165.    The plaintiffs will suffer irreparable harm if the defendants are not enjoined from enforcing Minnesota's policy criminalizing both wearing and not wearing a mask because the plaintiffs will lose opportunities to engage in political activities, including voting, protected by the First Amendment.

26

166.    The defendants will not suffer any harm if they are prevented from enforcing Minnesota's policy criminalizing both wearing and not wearing a mask.

167.    Granting injunctive relief is in the public interest because doing so protects everybody's free-speech rights.

**Constitutional claims under 42 U.S.C. § 1983 entitle the plaintiffs to attorneys' fees and costs.**

168.    The plaintiffs incorporate this complaint's previous paragraphs.

169.    The defendants are responsible for enforcing Minnesota's policy criminalizing both wearing and not wearing a mask.

170.    Because enforcement or threatened enforcement of Minnesota's policy criminalizing both wearing and not wearing a mask violates, under color of state law, the Plaintiffs' First Amendment rights, the Plaintiffs are entitled to attorneys' fees and costs incurred in this suit. 42 U.S.C. §§ 1983, 1988.

## Prayer for Relief

Therefore, the plaintiffs respectfully ask that this Court:

1.    Declare Minnesota's law, executive order and memorandum regarding masks in public places and polling places to be facially, and as applied to the facts of this case, unconstitutional under the First and Fourteenth Amendments;

2.    Grant a preliminary and permanent injunction enjoining the defendants from enforcing Minnesota's policy regarding masks in public places and polling places;

3.    Award the plaintiffs all costs, expenses, and expert witness fees allowed by law;

4.      Award the plaintiffs attorneys' fees and costs allowed under 42 U.S.C. § 1988;

5.      Award the plaintiffs attorneys' fees and costs allowed under Minn. Stat. §§

15.471–15.474; and

6.      Award the plaintiffs such other and further relief as this Court deems just.


Dated: August 24, 2020.                    /s/Erick G. Kaardal
                                           Erick G. Kaardal, 229647
                                           Mohrman, Kaardal & Erickson, P.A.
                                           150 South Fifth Street, Suite 3100
                                           Minneapolis, MN 55402
                                           Telephone:    (612) 341-1074
                                           Facsimile:    (612) 341-1076
                                           Email:        kaardal@mklaw.com
                                           Attorneys for the Plaintiffs