UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MINNESOTA VOTERS ALLIANCE;                    Case No. 20-CV-1688 (PJS/ECW)
ANDREW CILEK; KIM CROCKETT;
CRAIG ANDERSON; YVONNE
HUNDSHAMER; and CRAIG JONES,

                    Plaintiffs,

v.                                                                    ORDER

TIM WALZ, in his official capacity as
Governor of Minnesota; STEVE SIMON,
in his official capacity as Secretary of
State of Minnesota; MARK V. CHAPIN,
in his official capacity as Hennepin
County Auditor; CHRISTOPHER A.
SAMUEL, in his official capacity as
Ramsey County Auditor; KEITH
ELLISON, in his official capacity as
Attorney General of Minnesota; MIKE
FREEMAN, in his official capacity as
Hennepin County Attorney; and JOHN
CHOI, in his official capacity as Ramsey
County Attorney,

                    Defendants.

Erick G. Kaardal, MOHRMAN, KAARDAL & ERICKSON, P.A., for plaintiffs.

Elizabeth C. Kramer, Megan J. McKenzie, and Kevin A. Finnerty, MINNESOTA
ATTORNEY GENERAL'S OFFICE, for defendants Tim Walz, Steve Simon, and
Keith Ellison.

Kelly K. Pierce and Jeffrey M. Wojciechowski, HENNEPIN COUNTY
ATTORNEY'S OFFICE, for defendants Mike Freeman and Mark V. Chapin.

Robert B. Roche, RAMSEY COUNTY ATTORNEY'S OFFICE, for defendants John Choi and Christopher A. Samuel.

On July 22, 2020, Governor Tim Walz issued Executive Order 20-81, which requires Minnesotans to wear face coverings in indoor public settings in order to control the spread of COVID-19. Plaintiffs—the Minnesota Voters Alliance and five political activists—have brought this action against Governor Walz and other public officials[1] to challenge the legality of Executive Order 20-81. Plaintiffs have framed this action as primarily relating to the impact of Executive Order 20-81 on their right to vote in the upcoming election. In fact, though, plaintiffs argue that Executive Order 20-81 is invalid in its entirety—i.e., that Governor Walz does not have authority to order any person to wear a face covering in any indoor public setting. Indeed, plaintiffs go even further: Plaintiffs argue that it is illegal for any person to *choose* to wear a face covering in a public place for the purpose of preventing the spread of COVID-19.

This matter is before the Court on plaintiffs' motion for a preliminary injunction. The Court held a lengthy hearing on that motion on September 23, 2020. For the reasons that follow, plaintiffs' motion is denied.

---

[1]Plaintiffs have sued Governor Walz, Secretary of State Steve Simon, and Attorney General Keith Ellison ("the State defendants"); Hennepin County Attorney Mike Freeman and Hennepin County Auditor Mark Chapin ("the Hennepin defendants"); and Ramsey County Attorney John Choi and Ramsey County Auditor Christopher Samuel ("the Ramsey defendants").

## I.  BACKGROUND

### A.  The COVID-19 Pandemic

COVID-19 is a deadly disease caused by a virus that is easily spread between people through respiratory droplets produced when an infected person coughs, sneezes, or talks.  Kramer Decl. Ex. 2.  It appears that the virus may also be transmitted via respiratory microdroplets that can travel in the air for tens of meters and remain airborne for hours.  *Id.* Exs. 3, 4.  As a result, COVID-19 is easily transmitted in indoor environments, particularly if those environments are crowded or lack adequate ventilation.  *Id.* Ex. 3.  The virus may be transmitted by infected people who have no symptoms and do not even know that they are infected.  *Id.* Exs. 5, 8.

On March 11, 2020, the World Health Organization declared a global pandemic. *Id.* Ex. 6.  Since the start of the pandemic, over 7.2 million cases of COVID-19 in the United States have been reported to the Centers for Disease Control and Prevention ("CDC") and over 206,000 Americans have died, including over 2,000 Minnesotans.[2] There is currently no cure and no vaccine.  *Id.* Exs. 1, 5.  In response to this public-health crisis, the President declared a national emergency on March 13, 2020 and later

---

[2]*See* Centers for Disease Control and Prevention, at www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Oct. 2, 2020).

approved major disaster declarations in all 50 states—the first time a president had done so in the history of the United States.  *Id.* Exs. 9, 10.

## B.  Face Coverings

Federal and state health officials recommend face coverings to slow the spread of COVID-19.  According to CDC officials, "the more individuals wear cloth face coverings in public places where they may be close together, the more the entire community is protected."  *Id.* Ex. 12.  Recent studies have found that face-covering mandates are associated with large declines in the growth rate of COVID-19 infections and fatalities.  *Id.* Exs. 21, 22, 24.  One study estimated that a nationwide mandate would significantly benefit the economy by substituting a mask mandate for renewed lockdowns that would subtract nearly 5% from GDP.  *Id.* Ex. 24.  Projections by the University of Washington indicate that universal use of face coverings would save thousands of lives in Minnesota.  *Id.* Ex. 23.

It is important to stress that plaintiffs do not deny any of this.  Plaintiffs do not deny the existence of COVID-19, or that it is a dangerous disease, or that it is easily spread (including by people who do not know that they are infected), or that face coverings slow its spread and thus save lives.  To the contrary, plaintiffs emphasize that "[n]o one in this case is saying that mask wearing isn't a good thing."  ECF No. 1 at 1–2.

*C. Executive Order 20-81*

On March 13, 2020, the same day that the President declared a national emergency, Governor Walz declared a peacetime emergency in Minnesota. *See* Executive Order 20-01; Minn. Stat. § 12.31, subd. 2(a). Among the actions that Governor Walz has taken pursuant to his emergency powers is issuing Executive Order 20-81 ("EO 20-81"), which requires Minnesotans to wear face coverings while present in indoor businesses and public indoor spaces and while waiting outdoors to enter an indoor business or public indoor space. Am. Compl. Ex. 1 [hereinafter "EO 20-81"] ¶ 9(a). Certain individuals are exempt from the mandate, including individuals with physical or mental conditions that make it unreasonable for them to wear a face covering, workers for whom a face covering would create a job hazard, and children under the age of six. EO 20-81 ¶ 8. An individual who willfully violates EO 20-81 is guilty of a petty misdemeanor. EO 20-81 ¶ 20(a).

II.  ANALYSIS

*A. Standard of Review*

In reviewing a motion for a preliminary injunction, a court must consider four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between that harm and the harm that granting the injunction will inflict on the other parties; and (4) the

public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en

banc).  "A preliminary injunction is an extraordinary remedy, and the burden of

establishing the propriety of an injunction is on the movant."  *Watkins Inc. v. Lewis*, 346

F.3d 841, 844 (8th Cir. 2003) (internal citation omitted).

### B.  *Likelihood of Success*

The main thrust of plaintiffs' amended complaint is that it is impossible for

anyone to enter an indoor public setting in Minnesota without committing a crime.  On

the one hand, EO 20-81 makes it unlawful *not* to wear a face covering in an indoor

public setting.  On the other hand, according to plaintiffs, a Minnesota statute makes it

unlawful *to* wear a face covering in any public place, including any indoor public

setting.  Specifically, Minn. Stat. § 609.735 provides:

> A person whose identity is concealed by the person in
> a public place by means of a robe, mask, or other disguise,
> unless based on religious beliefs, or incidental to
> amusement, entertainment, protection from weather, or
> medical treatment, is guilty of a misdemeanor.

Because EO 20-81 and § 609.735 are in direct conflict, plaintiffs argue, they cannot

enter an indoor public place—such as a polling place, or a meeting hall, or even a

grocery store—without committing a crime.  As a result, plaintiffs contend that they are

chilled from engaging in political activities that are protected by the First Amendment,

such as voting in person, campaigning in public, and associating with others in indoor settings.

Plaintiffs also allege that EO 20-81, in combination with guidance from the Secretary of State concerning how to implement EO 20-81 at polling places, violates the Elections Clause in Article I, § 4 of the United States Constitution.  Plaintiffs further allege that EO 20-81, standing alone, violates the First Amendment and various provisions of the Minnesota Constitution.  Before addressing the merits of plaintiffs' claims, the Court must address a number of thorny jurisdictional issues.

## 1.  Jurisdictional Issues

### a.  Standing

Defendants argue that plaintiffs are unlikely to prevail in this litigation because they lack standing.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Standing consists of three elements: "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The plaintiff bears

the burden of establishing standing and must clearly allege facts demonstrating each element. *Id.* at 1547; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

### i. Ramsey Defendants

Under Minnesota law, county attorneys "shall . . . prosecute felonies . . . and, to the extent prescribed by law, gross misdemeanors, misdemeanors, petty misdemeanors, and violations of municipal ordinances, charter provisions and rules or regulations[.]" Minn. Stat. § 388.051, subd. 1(3); *see also* Minn. Stat. § 484.87, subd. 3 ("Except as provided in subdivision 2 and as otherwise provided by law, violations of state law that are petty misdemeanors or misdemeanors must be prosecuted by the attorney of the statutory or home rule charter city where the violation is alleged to have occurred, if the city has a population greater than 600.").  As noted, a violation of § 609.735 is a misdemeanor, and a violation of EO 20-81 is a petty misdemeanor.

The Ramsey defendants argue that, because state law does not give the Ramsey County Attorney authority to prosecute these offenses, plaintiffs' alleged injuries are not traceable to him, nor would plaintiffs' injuries be redressed by a favorable judicial decision on any claims against him.[3]  *See Dig. Recognition Network, Inc. v. Hutchinson*, 803

---

[3]The Hennepin defendants do not argue that the Hennepin County Attorney lacks authority to prosecute non-felony offenses.  At oral argument, defendants explained that, unlike Ramsey County, Hennepin County contains unincorporated areas in which there is no city attorney available to prosecute non-felony offenses, and accordingly the Hennepin County Attorney has some authority to prosecute such

(continued...)

F.3d 952, 957–58 (8th Cir. 2015) ("When a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." (cleaned up)).

In response, plaintiffs do not point to any provision of state law granting the Ramsey County Attorney authority to prosecute misdemeanors under § 609.735 or petty misdemeanors under EO 20-81. Instead, plaintiffs cite *State v. Lemmer*, 736 N.W.2d 650 (Minn. 2007), which states that "the county attorney acts as the attorney for the state in all criminal matters within the county and has no authority to act in civil cases, such as implied consent proceedings, in which the state is a party." *Id.* at 660. But *Lemmer* had nothing to do with the allocation of prosecutorial authority between county and city attorneys; indeed, later in the same paragraph, *Lemmer* cites § 388.051 and notes that county attorneys' duties "include prosecuting felonies, and *to the extent prescribed by law*, gross misdemeanors, misdemeanors, and petty misdemeanors." *Id.* (emphasis added).

At oral argument, plaintiffs pointed out that county attorneys have civil-enforcement powers under EO 20-81. But the provision that plaintiffs cited addresses the liability of *businesses*, not *individuals*. EO 20-81 ¶ 20(b)(ii). Nowhere in plaintiffs' amended complaint or briefs does any plaintiff contend that the plaintiff is a business or

---

[3](...continued)
offenses.

otherwise subject to EO 20-81's business provisions.  Because plaintiffs have failed to

meet their burden to show traceability and redressability as against the Ramsey County

Attorney, the Court finds that plaintiffs are unlikely to prevail on any claims against

him.  *See Dig. Recognition Network, Inc.*, 803 F.3d at 958 ("The redressability prong is not

met when a plaintiff seeks relief against a defendant with no power to enforce a

challenged statute." (citation and quotation marks omitted)).

With respect to the Ramsey County Auditor, the Ramsey defendants similarly

argue that there is no law giving him the authority to prosecute offenses under either

§ 609.735 or EO 20-81.  Plaintiffs point to a July 22 guidance memorandum issued by the

Secretary of State to county auditors and election officials concerning the impact of

EO 20-81 on voting in Minnesota.  Am. Compl. Ex. 2.  The Secretary of State issued the

guidance in response to questions concerning how to handle compliance with EO 20-81

in polling places.  Am. Compl. Ex. 2.  The guidance recommends that, if a voter enters a

polling place without a face covering, (1) an election official should inform the voter of

the face-covering requirement and offer the voter a disposable mask; (2) if the voter

refuses to wear a face covering, the voter should be offered the opportunity for outdoor

curbside voting; and (3) if the voter insists on voting inside the polling place without a

face covering, the voter should be permitted to do so after again being informed that

face coverings are required and that the voter's refusal to comply with that requirement

will be recorded and "reported to the appropriate authorities."  Am. Compl. Ex. 2.

This guidance was issued to county auditors and election officials, but it does not

purport to be binding; rather, it is characterized as "guidance that we hope is helpful as

you work with your municipalities on polling place procedures."  Am. Compl. Ex. 2.

Nor does this guidance vest county auditors with any authority to prosecute violations

of EO 20-81; instead, it simply recommends that the auditors advise election officials to

report any violations to the "appropriate authorities."  Am. Compl. Ex. 2.  It therefore

appears that plaintiffs do not have standing to pursue any claims against the Ramsey

County Auditor.[4]

ii.  State and Hennepin Defendants

The State and Hennepin defendants argue that plaintiffs do not have standing

because they have failed to plead a particularized injury; instead, the injury that

plaintiffs identify (being subject to the allegedly conflicting dictates of § 609.735 and EO

20-81) is suffered by all Minnesotans.  The cases on which defendants rely, however, do

not hold that if a government action violates the rights of all citizens, no citizen has

---

[4]The Hennepin defendants did not raise this argument with respect to the
Hennepin County Auditor, and the Court does not know whether the authority of the
Hennepin County Auditor differs from the authority of the Ramsey County Auditor.  If
the two auditors are similarly situated, plaintiffs would not appear to have standing to
pursue claims against the Hennepin County Auditor.

standing to challenge that action in federal court.  Instead, those cases involve attempts by a plaintiff to vindicate a generalized, abstract interest in the proper application of the law.  *See, e.g., Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) (plaintiffs lacked standing to challenge judicial redistricting because "[t]he only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed"); *see also FEC v. Akins*, 524 U.S. 11, 23 (1998) ("The kind of judicial language to which the FEC points, however, invariably appears in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature—for example, harm to the 'common concern for obedience to law.'" (quoting *L. Singer & Sons v. Union Pac. R.*, 311 U.S. 295, 303 (1940))).

Here, by contrast, plaintiffs allege an injury personal to them.  Specifically, they allege that they want to engage in political activities in indoor public settings but are chilled from doing so.  This is a sufficiently individual and particularized injury, at least insofar as plaintiffs' claims rest on the alleged conflict between § 609.735 and EO 20-81. *See Susan B. Anthony List*, 573 U.S. at 159 ("a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder" (citation and quotation marks omitted)); *Akins*, 524 U.S. at 24 ("Often the fact that an interest is abstract and the fact that it is

widely shared go hand in hand.  But their association is not invariable, and where a

harm is concrete, though widely shared, the Court has found 'injury in fact.'").

With respect to plaintiffs' standalone challenges to the validity of EO 20-81,

however, their allegations appear insufficient to establish an injury in fact.  The

amended complaint alleges that plaintiffs want the freedom to choose whether to wear

a mask, Am. Compl. ¶¶ 3, 30, that they intend to vote and engage in other political

activities either wearing or not wearing a mask, Am. Compl. ¶ 18, and that they have "a

right to protect themselves by wearing a mask and a right to politically protest the

government's pandemic response by not wearing a mask," Am. Compl. ¶ 4.  As an

aside, the Court notes that plaintiffs' claims are inconsistent with some of the major

premises of their lawsuit.  Plaintiffs strenuously argue that § 609.735 makes it *unlawful*

to wear a mask in a public place, and that wearing a mask to slow the spread of COVID-

19 does not fit within the "medical treatment" exception to the statute.  Plaintiffs further

argue that EO-81 is invalid because an executive order cannot conflict with a valid

statute.  If plaintiffs are correct, they do not have the right to "choose" whether or not to

wear a mask in a public place; § 609.735 bars them from doing so.

In any event, the amended complaint stops short of alleging that any individual

plaintiff wants or intends to violate EO 20-81 by not wearing a face covering when

EO 20-81 would require them to do so.  Again, plaintiffs bear the burden of clearly

alleging facts demonstrating each element of standing, *Spokeo*, 136 S. Ct. at 1547, and

"[e]ach plaintiff must establish standing for each form of relief sought," *Miller v.*

*Thurston*, 967 F.3d 727, 734 (8th Cir. 2020).  As no plaintiff has clearly "allege[d] an

intention to engage in a course of conduct arguably . . . proscribed by" EO 20-81, *Susan*

*B. Anthony List*, 573 U.S. at 159 (citation and quotation marks omitted), no plaintiff

appears to have standing to challenge the validity of EO 20-81 in its own right.[5]

        The State and Hennepin defendants also argue that plaintiffs' alleged future

injuries are too speculative to establish standing.  *See Clapper v. Amnesty Int'l, USA*, 568

U.S. 398, 409 (2013) ("we have repeatedly reiterated that threatened injury must be

*certainly impending* to constitute injury in fact, and that allegations of *possible* future

injury are not sufficient" (cleaned up)).  Relatedly, the State and Hennepin defendants

argue that plaintiffs face no risk of prosecution from them and therefore plaintiffs'

injuries are not "fairly traceable" to them.

        With respect to the Secretary of State: The only alleged connection between the

Secretary of State and plaintiffs' alleged injury is the July 22 guidance discussed above.

The guidance, however, is simply that—guidance—and plaintiffs do not point to any

provision in any law granting the Secretary of State any authority to prosecute

_____

        [5]This argument would appear to preclude plaintiffs from establishing standing
with respect to such claims against the Ramsey defendants as well.  *See Dunbar v. Wells*
*Fargo Bank, N.A.*, 709 F.3d 1254, 1256 n.4 (8th Cir. 2013) (federal courts have an
independent obligation to determine whether subject-matter jurisdiction exists).

violations of either § 609.735 or EO 20-81.  It therefore appears that plaintiffs lack

standing to pursue claims against the Secretary of State.[6]

With respect to the remaining State and Hennepin defendants:  "The Supreme

Court has repeatedly found that plaintiffs have standing to bring pre-enforcement First

Amendment challenges to criminal statutes, even when those statutes have never been

enforced."  *281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011).  "It is only

evidence—via official policy or a long history of disuse—that authorities actually reject

a statute that undermines its chilling effect."  *Id.*; *see also UFCW Int'l Union v. IBP, Inc.*,

857 F.2d 422, 428 (8th Cir. 1988) ("Where plaintiffs allege an intention to engage in a

---

[6]For similar reasons, the Secretary of State is likely entitled to Eleventh
Amendment immunity.  *See Ex parte Young*, 209 U.S. 123, 157 (1908) (for the *Ex parte
Young* exception to Eleventh Amendment immunity to apply, the state official must
have "some connection" to the challenged law); *see also Calzone v. Hawley*, 866 F.3d 866,
869 (8th Cir. 2017) (noting that, in cases against state officials, the standing and Eleventh
Amendment issues are similar).

The Court does not read *Calzone* or *Missouri Protection & Advocacy Services, Inc. v.
Carnahan*, 499 F.3d 803 (8th Cir. 2007) to the contrary.  In *Calzone*, the Eighth Circuit
found that the superintendent of the state highway patrol had a sufficient connection to
an allegedly unconstitutional search policy because she had promulgated the policy
pursuant to her authority to enforce a state highway regulation.  *Calzone*, 866 F.3d
at 870.  In *Missouri Protection & Advocacy Services*, the Eighth Circuit held that the
Missouri secretary of state had a sufficient connection to the enforcement of a law
disqualifying certain persons from voting partly because state law obligated the
secretary of state to send local election authorities the names of persons ineligible to
vote under the law.  499 F.3d at 807.  Here, by contrast, the Secretary of State simply
provided guidance in response to questions from local election officials concerning the
effect of EO 20-81 on polling places; there is no law formally connecting the Secretary to
the enforcement of EO 20-81.

course of conduct arguably affected with a constitutional interest which is clearly

proscribed by statute, courts have found standing to challenge the statute, even absent a

specific threat of enforcement.").

It is true that EO 20-81 sets forth the state's official policy that wearing a face

covering in compliance with EO 20-81 does not violate § 609.735.  EO 20-81 ¶ 19.  There

is therefore no credible threat that the Governor or the Attorney General will instigate

prosecution against an individual under § 609.735 for *complying* with EO 20-81.[7]  But the

reverse is not true—that is, neither the Governor nor the Attorney General has an

official policy against prosecuting individuals for *violating* EO 20-81.  Nor have the

Hennepin defendants claimed that they have adopted an official policy not to prosecute

violations of EO 20-81 or § 609.735.[8]  It therefore appears that plaintiffs' alleged fear of

facing prosecution for either wearing or not wearing a mask is sufficient under *281 Care*

*Committee* to establish standing as against these defendants.

> b. *Eleventh Amendment*

> i. Ex parte Young

_____

[7]As discussed below, Minn. Stat. § 8.01 grants the Governor and the Attorney General some discretionary authority to be involved in criminal prosecutions.

[8]As noted below, there appear to be no reported cases of prosecutions under either § 609.735 or its predecessor since the latter was first enacted in 1923.  Defendants do not argue that this long history of lack of prosecution deprives plaintiffs of standing, however.

The State defendants next argue that they are entitled to Eleventh Amendment immunity.  Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation and quotation marks omitted).  The Supreme Court recognized an exception to this immunity in *Ex parte Young*, 209 U.S. 123 (1908).  "Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Comm.*, 638 F.3d at 632.  For this exception to apply, the state official must have "some connection" with the enforcement of the allegedly unconstitutional law; otherwise, the lawsuit is "merely making [the official] a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

In *281 Care Committee*, the Eighth Circuit held that the Minnesota Attorney General had a sufficient connection with the enforcement of a challenged state statute based in part on the fact that, under Minn. Stat. § 8.01, a county attorney may request that the Attorney General take over a criminal prosecution.  *281 Care Comm.*, 638 F.3d at 632–33; *see also Reprod. Health Servs. of Planned Parenthood v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (holding that the Missouri attorney general was potentially a proper defendant because Missouri law permits the governor to direct him to aid prosecutors

and trial courts to direct him to sign indictments).  It therefore appears that plaintiffs' claims against the Attorney General may fall within *Ex parte Young*.  Similarly, § 8.01 grants the Governor the authority to request the Attorney General to "prosecute any person charged with an indictable offense," indicating that claims against the Governor may also fall within *Ex parte Young*.

The Court recognizes that, in a second appeal, the Eighth Circuit in *281 Care Committee* held that the Minnesota Attorney General was immune under the Eleventh Amendment.  *281 Care Comm. v. Arneson*, 766 F.3d 774, 796–97 (8th Cir. 2014).  By that stage of the proceedings, however, a deputy attorney general had filed an affidavit attesting that the Attorney General's Office had never initiated a prosecution under the challenged law, that the office was not aware of any county attorney who had asked the office to do so, that the office would decline any such request, and that the office had no intention of undertaking any enforcement activities.  *Id.*  On the basis of that affidavit, the Eighth Circuit held that the Attorney General was immune from suit under the Eleventh Amendment.  *Id.* at 797.  In this case, however, neither the Governor nor the Attorney General has introduced evidence that he does not intend to use his authority under § 8.01.

ii.  Pennhurst

Finally, the State defendants argue that, under the Eleventh Amendment and *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the Court lacks jurisdiction to resolve plaintiffs' claims that EO 20-81 violates the Minnesota Constitution.  The Court agrees.

As the Supreme Court explained in *Pennhurst*, the *Ex parte Young* exception to Eleventh Amendment immunity is premised on the theory that "sovereign immunity does not apply because an official who acts unconstitutionally is 'stripped of his official or representative character.'"  *Id.* at 104 (quoting *Ex parte Young*, 209 U.S. at 160).  This is somewhat of a legal fiction, but it is necessary to vindicate *federal* rights and ensure the supremacy of *federal* law.  *Id.* at 105.  That necessity does not exist in cases in which a state official is alleged to be acting in violation of *state* law.  "On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."  *Id.* at 106.  The *Ex parte Young* exception to Eleventh Amendment immunity therefore does not apply to plaintiffs' claims that Governor Walz and the other State defendants have violated *Minnesota* law.  *See Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345–46 (7th Cir. 2020) (holding that *Pennhurst* barred plaintiffs' claim that COVID-19 restrictions on religious gatherings violated state law); *see also Bacon v. Neer*, 631 F.3d 875, 880 (8th Cir. 2011) (explaining that a federal court would have no jurisdiction to enjoin the

-19-

defendants from enforcing state law even if their construction of state law was based on an erroneous interpretation of federal law).

Plaintiffs' only argument regarding *Pennhurst* seems to be that, although the Court cannot enjoin state officials from violating state law, the Court can decide whether state officials have violated state law in the course of litigating the federal constitutional claims. But whether EO 20-81 violates the Minnesota Constitution is not relevant to the merits of plaintiffs' federal claims. Moreover, the fact that the Court may have jurisdiction over plaintiffs' federal claims does not establish an exception to Eleventh Amendment immunity; the Court still may not "intru[de] on state sovereignty" by "instruct[ing] state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. Finally, the doctrine of constitutional avoidance does not override the Eleventh Amendment. *See id.* at 120–23.

To summarize, then, it appears that the Court likely has jurisdiction only over plaintiffs' federal claims against the Governor, the Attorney General, and the Hennepin defendants, and only insofar as those claims rest on plaintiffs' allegation that EO 20-81 conflicts with § 609.735.

2.  Merits

*a.  Section 609.735 and EO 20-81*

As noted, plaintiffs' main claim is that they are caught in an impossible situation: EO 20-81 makes it a crime *not* to wear face coverings in indoor public settings, while Minn. Stat. § 609.735 makes it a crime *to* wear face coverings in public places (with exceptions that do not apply to this case[9]).  Defendants argue that EO 20-81 and § 609.735 do not, in fact, conflict because (1) § 609.735 prohibits concealing one's identity by means of a "disguise," and the face coverings required by EO 20-81 neither conceal one's identity nor constitute a "disguise"; and (2) § 609.735 requires proof of an intent to conceal one's identity, and someone who wears a mask to comply with EO 20-81 is not wearing a mask to conceal his or her identity.

These issues have not been addressed by the Minnesota Supreme Court, and therefore this Court must attempt to predict "what that court would probably hold were it to decide the issue[s]." *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995).  For a number of reasons, this Court believes that the Minnesota Supreme Court would hold that § 609.735 is violated only when someone wears a face covering for the purpose of concealing his or her identity.

---

[9]Defendants do not argue that wearing a face mask to slow the spread of COVID-19 fits within the "medical treatment" exception to § 609.735.

The original version of the statute was enacted in 1923.[10]  *See* 1923 Minn. Laws ch. 160, § 1.  Like similar laws enacted during the same era, the law grew out of concerns over the rise of the Ku Klux Klan.  *See* Wayne R. Allen, Note, *Klan, Cloth & Constitution: Anti-Mask Laws & the First Amendment*, 25 Ga. L. Rev. 819, 821–22 & n.17 (1991).  The original version of the statute clearly required that the perpetrator act with the intent to conceal his or her identity:  "It shall be unlawful for any person . . . to appear on any street or highway, or in other public places or any place open to view by the general public, with his face or person partially or completely concealed by means of a mask or other regalia or paraphernalia, *with intent thereby to conceal the identity of such person*."  Minn. Stat. § 615.16 (1941) (emphasis added).  The original version of the statute also established a presumption:  "The wearing of any such mask, regalia or paraphernalia by any person on any street or highway or in other public places or any place open to view by the general public, shall be presumptive evidence of wearing the same with intent to conceal the identity of such person[.]"  *Id.*

The statute was amended in 1963.  *See* 1963 Minn. Laws ch. 753, § 609.735.  The purpose of the amendment was to delete the presumption in light of *State v. Higgin*, 99

---

[10]The statute was originally codified at Minn. Stat. § 10300 (1923) and later at Minn. Stat. § 615.16 (1941).

N.W.2d 902 (Minn. 1959).[11]  Although the remainder of the statute was rewritten—and although the rewritten version did not contain an explicit intent requirement—the Advisory Committee Comment explained that the substance of the new version was intended to be the same as the substance of the original version (save for the deletion of the presumption).  *See* Minn. Stat. § 609.735, 1963 Advisory Comm. Cmt. ("This contains the substance of Minn. St. § 615.16 which will be superseded.  The presumption contained in the latter section has not been retained in view of *State v. Higgin*, 1960, 257 Minn. 46, 99 N.W.2d 902.").  Minnesota appears to regard such commentary as authoritative.  *See State v. Lopez*, 908 N.W.2d 334, 336 n.3 (Minn. 2018) (citing *State v. Vredenberg*, 264 N.W.2d 406, 407 (Minn. 1978) (per curiam) as an example of a case in which there was "evidence that the Legislature did not intend to change the law"); *Vredenberg*, 264 at 407 (relying on an Advisory Committee Comment stating that the amended statute contained the substance of the earlier statute to find no change in the law).

In addition to the statutory history, the language of § 609.735 also suggests that intent to conceal is an element of the offense.  The statute makes it unlawful to conceal one's identity in a particular way—"by means of a robe, mask, or other disguise."  The

---

[11]*Higgin* held that, when specific intent is an element of an offense, a jury can never be instructed that a given set of facts gives rise to a presumption of such intent. *Higgin*, 99 N.W.2d at 907.

word "other" in the phrase "robe, mask, or other disguise" indicates that the statute

encompasses only the use of a robe or mask as a "disguise."  In other words, the statute

does not make it unlawful to wear robes and masks; the statute makes it unlawful to

wear *disguises*.  "Disguise," in turn, connotes something worn for the purpose of

concealing one's identity.  Notably, three of the five exceptions to the statute—for

religious beliefs, amusement, and entertainment—cover cases in which people could be

wearing face coverings (such as Halloween costumes) with the intent to conceal their

identities.

It is true that, if § 609.735 is not violated unless a person acts with intent to

conceal his or her identity, then the exceptions for protection from weather and for

medical treatment are redundant.  But "[r]edundancy is not a silver bullet," and

"[s]ometimes the better overall reading of the statute contains some redundancy."

*Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019).

Finally, the Court believes that the Minnesota Supreme Court would interpret

§ 609.735 to require intent to conceal one's identity because, without such a

requirement, the statute would lead to absurd results.  *See Am. Fam. Ins. Grp. v. Schroedl*,

616 N.W.2d 273, 278 (Minn. 2000) ("courts should construe a statute to avoid absurd

results and unjust consequences").  A construction worker could not wear a dust mask

while remodeling a public space, a government official could not wear a hazmat suit

while cleaning up a chemical spill in a public place, an emergency medical technician could not wear a surgical mask while tending to a person injured on a public road, and a nail artist could not wear a mask while giving a manicure. The Minnesota Legislature could not possibly have intended to criminalize such a broad range of commonplace conduct. *Cf. In re Welfare of C.R.M.*, 611 N.W.2d 802, 809 (Minn. 2000) ("great care is taken to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of what would otherwise be innocent conduct").

Indeed, as plaintiffs interpret the statute, § 609.735 not only bars Governor Walz from *ordering* Minnesotans to wear face coverings in public places, but § 609.735 bars Minnesotans from *voluntarily* wearing face coverings in public places if they are doing so to slow the spread of COVID-19. It is very difficult to believe that the Minnesota Supreme Court would interpret § 609.735 to *forbid* a Minnesotan from wearing a face mask in a public place if her reason for doing so was to protect herself from being infected by a communicable disease or to prevent herself from infecting another person. Needless to say, such an interpretation of § 609.735 would raise significant constitutional concerns. *Cf. Jacobson v. Massachusetts*, 197 U.S. 11, 38–39 (1905) (upholding a mandatory-vaccination provision, but suggesting that the result would be different if the plaintiff could have shown that vaccination "would seriously impair his health, or probably cause his death").

This is not to say that plaintiffs' position that § 609.735 conflicts with EO 20-81 is frivolous.[12]  But plaintiffs' reply brief did not bother to respond to defendants' arguments concerning the proper interpretation of § 609.735; in fact, plaintiffs' reply brief said nothing at all about their centerpiece claim that § 609.735 conflicts with EO 20-81.  This failure is particularly problematic in light of the fact that there are no Minnesota cases construing § 609.735.  Under all of the circumstances, the Court finds that plaintiffs have not met their burden to show a "fair chance of prevailing" on their argument that EO 20-81 conflicts with § 609.735.  *See Powell v. Noble*, 798 F.3d 690, 698 (8th Cir. 2015) (citation and quotation marks omitted).

### b.  Challenges to the Validity of EO 20-81

As noted, because plaintiffs have not clearly alleged that they intend to enter public indoor spaces without face coverings, they likely lack standing to pursue their challenges to the validity of EO 20-81 under the Elections Clause and the First Amendment.  Even if they had standing, however, both of their challenges lack merit.

### i.  Elections Clause

The Elections Clause provides as follows:

> The Times, Places and Manner of holding Elections for
> Senators and Representatives, shall be prescribed in each

---

[12]For example, Minn. Stat. § 609.02, subd. 9, undermines defendants' argument regarding intent.  But no party to this lawsuit has even cited § 609.02, subd. 9, much less addressed its impact on the issues now before the Court.

> State by the Legislature thereof; but the Congress may at any
> time by Law make or alter such Regulations, except as to the
> Places of chusing Senators.

U.S. Const. Art. I, § 4, cl. 1.

Plaintiffs' briefs and amended complaint seem to contend that EO 20-81 is a law regarding the "Manner of holding Elections" and violates the Elections Clause because it was not enacted by the "Legislature." After the Court pointed out at oral argument that EO 20-81 is a generally applicable provision that does not on its face govern elections, plaintiffs conceded that EO 20-81 does not, by itself, contravene the Elections Clause. Plaintiffs' claim now seems to be that EO 20-81 *in combination with the Secretary of State's guidance* contravenes the Elections Clause.

The Court disagrees. Plaintiffs have not cited, and the Court has not found, a single case holding that a generally applicable provision that incidentally applies at a polling place constitutes a regulation of the "Times, Places and Manner of holding Elections." *Cf. Cook v. Gralike*, 531 U.S. 510, 523–24 (2001) (holding that the challenged law "bears no relation to the 'manner' of elections as we understand it, for in our commonsense view that term encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns'" (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932))).

The fact that the Secretary of State provided advice as to how to implement EO 20-81 at polling places does not somehow turn EO 20-81 into a law regarding the "Manner of holding elections."  As noted, the Secretary of State's memorandum is not a law and does not purport to be binding.  The Court rejects the notion that the state official charged with overseeing elections cannot provide guidance concerning how to implement a generally applicable provision at polling places without somehow running afoul of the Elections Clause.  If that were the case, election officials would be barred from providing advice on a whole range of subjects, from how to handle disruptive voters to how to accommodate voters with disabilities.  Plaintiffs' claim under the Elections Clause is plainly meritless.

### ii.  First Amendment

Finally, plaintiffs allege that EO 20-81 violates the First Amendment because it does not permit them to enter indoor public spaces without face coverings as a way to protest the requirement that they wear face coverings when they enter indoor public spaces.  This claim is meritless for two reasons:  First, EO 20-81 does not implicate the First Amendment at all.  Second, even if EO 20-81 did implicate the First Amendment, the order would easily pass muster under both *United States v. O'Brien*, 391 U.S. 367 (1968), and *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

The Supreme Court has recognized that expressive conduct may be entitled to a measure of First Amendment protection. *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (flag burning). In general, courts evaluate the validity of a law that regulates expressive conduct under the standard articulated in *O'Brien*. This does not mean, however, that every law regulating conduct is subject to scrutiny under *O'Brien* whenever an individual decides to violate the law for the purpose of sending a message.

> If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into "speech" simply by talking about it. For instance, if an individual announces that he intends to express his disapproval of the Internal Revenue Service by refusing to pay his income taxes, we would have to apply *O'Brien* to determine whether the Tax Code violates the First Amendment. Neither *O'Brien* nor its progeny supports such a result.

*Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 66 (2006) ("*FAIR*") (rejecting First Amendment challenge to provision requiring institutions of higher learning to permit military recruiters access to students on the same basis as other recruiters or forfeit certain federal funds).

To merit First Amendment protection under *O'Brien*, then, the conduct regulated by the challenged law must be "inherently expressive." *Id.* Here, as in *FAIR*, the conduct at issue is not inherently expressive. Like the hypothetical observer in *FAIR*—who, absent explanation, would have no idea why a military recruiter would be

interviewing law students somewhere other than on a law-school campus, *id.*—an

observer would have no idea why someone is not wearing a face covering.  Absent

explanation, the observer would not know whether the person is exempt from EO 20-

81, or simply forgot to bring a face covering, or is trying to convey a political message.

That fact takes the conduct outside of the First Amendment protection afforded by

*O'Brien.  Id.* ("The fact that such explanatory speech is necessary is strong evidence that

the conduct at issue here is not so inherently expressive that it warrants protection

under *O'Brien.*").

Even if wearing or not wearing a face covering was inherently expressive, EO 20-

81 is clearly constitutional, whether analyzed under *O'Brien* or *Jacobson.*  Under *O'Brien*,

> a government regulation is sufficiently justified if it is within
> the constitutional power of the Government; if it furthers an
> important or substantial governmental interest; if the
> governmental interest is unrelated to the suppression of free
> expression; and if the incidental restriction on alleged First
> Amendment freedoms is no greater than is essential to the
> furtherance of that interest.

*O'Brien*, 391 U.S. at 377.

There is no question that Minnesota has the constitutional authority to enact

measures to protect the health and safety of its citizens.  *See Jacobson*, 197 U.S. at 24–25

(under the Constitution, states retain the general police power to enact reasonable

regulations to protect public health and safety).  Likewise, there is no question that

-30-

EO 20-81 furthers the substantial government interest in controlling the spread of a deadly and highly contagious disease.  As discussed above, federal health officials recommend face coverings as an effective way to slow the spread of COVID-19, and this recommendation finds support in recent studies.  Finally, EO 20-81 is unrelated to the suppression of free expression and has at most an incidental effect on First Amendment freedoms that is no greater than necessary; plaintiffs are free to express their opinions about EO 20-81 in every conceivable way *except* by violating its provisions and putting at risk the lives and health of their fellow citizens.

Likewise, EO 20-81 is constitutional under the standard established in *Jacobson*, which requires courts to examine whether a measure adopted to address a public-health crisis has a "real or substantial relation" to the crisis and, assuming that it has such a relation, whether it is "beyond all question, a plain, palpable invasion" of a constitutional right.  *Jacobson*, 197 U.S. at 31; *see In re Rutledge*, 956 F.3d 1018, 1028–29 (8th Cir. 2020) (applying *Jacobson* to assess the constitutionality of a measure adopted in response to the COVID-19-pandemic).  Again, there is no question that EO 20-81 bears a real and substantial relation to the public-health crisis caused by COVID-19.  And EO 20-81 either does not implicate the First Amendment at all or, at most, has an incidental and trivial impact on First Amendment freedoms.  In short, plaintiffs have no chance of success on their claim that EO 20-81, standing alone, violates the First Amendment.

C.  *Threat of Irreparable Harm, Balance of Harms, and the Public Interest*

Plaintiffs have not shown a threat of irreparable harm.  They likely lack standing to pursue any claims against the Ramsey defendants or the Secretary of State.  Similarly, they likely lack standing to pursue any standalone challenge to the validity of EO 20-81.  Even if they had standing to pursue a standalone challenge, the Court would likely lack jurisdiction to entertain their state-law attacks, and they would have virtually no chance of success on their federal-law attacks.

That leaves plaintiffs' claim that the alleged conflict between EO 20-81 and § 609.735 infringes their First Amendment rights.  "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied."  *Minn. Citizens Concerned for Life v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (citation and quotation marks omitted).  This is the rare case, however, in which this general rule does not hold sway.  Even if plaintiffs had a "fair chance of prevailing" on their claim that a conflict between EO 20-81 and § 609.735 violates their First Amendment rights, they have not shown a threat of irreparable harm, because they have not shown that there is any chance that they will actually be prosecuted for violating § 609.735 if they wear a face covering in compliance with EO 20-81.

The record before the Court contains no evidence that either § 609.735 or its predecessor has ever been enforced, despite being on the books for nearly a century.[13] Meanwhile, over the past six months, millions of Minnesotans have worn face coverings in indoor public settings, such as stores, restaurants, salons, medical facilities, places of worship, offices, and classrooms. If plaintiffs' reading of § 609.735 is correct, then the statute has been violated hundreds of millions of times during the pandemic. And yet plaintiffs cannot point to a single instance of anyone being prosecuted under § 609.735 for wearing a face covering during the pandemic.

This is hardly surprising, as EO 20-81 itself makes clear that it is the state's official policy that complying with EO 20-81 does not violate § 609.735. Plaintiffs did manage to find a county attorney who was willing to opine that complying with EO 20-81 would violate § 609.735. (The county attorney did not address any of the evidence to

---

[13]Section 609.735 has been mentioned in only a handful of reported cases and has never been mentioned in connection with an actual prosecution under that statute. In *United States v. Pentaleri*, No. 07-CV-0298 (PAM/JJG), 2007 WL 4350798 (D. Minn. Dec. 11, 2007), the district court noted that there was probable cause to arrest because, among other reasons, the defendant appeared to have violated § 609.735. *Id.* at *5. There is no suggestion that the defendant was in fact arrested on that basis, however; instead, the court was applying the objective standard applicable under the Fourth Amendment. *Id.* In *Stepnes v. Ritschel*, 663 F.3d 952 (8th Cir. 2011), the Eighth Circuit mentioned that the plaintiff was booked for a violation of § 609.735. *Id.* at 958. There is no mention of the plaintiff wearing any kind of disguise, however, and the district-court decision indicates that the plaintiff was booked for unlawful gambling under a mistaken statutory citation. *Stepnes v. Ritschel*, 771 F. Supp. 2d 1019, 1028 (D. Minn. 2011).

the contrary discussed above.)  Putting aside the fact that none of the plaintiffs live in this county attorney's jurisdiction or even allege that they plan to visit that jurisdiction, this county attorney does not go so far as to say that he has prosecuted or would prosecute someone for wearing a mask in the midst of this pandemic.

In addition, given that their alleged inability to vote in person is a focal point of plaintiffs' allegations of irreparable harm, it is worth noting that plaintiffs can vote in person without fear of prosecution under § 609.735.  According to the Secretary of State's guidance, anyone who does not want to wear a mask at a polling place may vote curbside.  Am. Compl. Ex. 2.

In contrast to the non-existent threat of prosecution under § 609.735, the threat of harm from an injunction prohibiting the enforcement of EO 20-81 is immediate and compelling.[14]  The Governor's order addresses an ongoing public-health emergency by requiring a measure that federal health officials recommend and that studies have

---

[14]Plaintiffs seek the following injunction:  "The Defendants are enjoined from enforcing Minnesota's policy criminalizing wearing a mask and not wearing a mask in public places and in polling places."  ECF No. 21.  The Court notes, however, that even if an injunction were required to protect plaintiffs from a conflict between EO 20-81 and § 609.735, the Court would not necessarily have to enjoin the enforcement of EO 20-81. The Court could instead enjoin the enforcement of § 609.735 against anyone wearing a mask in compliance with EO 20-81.  Given that the choice would be between enjoining a particular application of a never-enforced statute, on the one hand, and enjoining an executive order that is saving lives during an ongoing public-health crisis, on the other hand, the balance of harms and the public interest would overwhelmingly point toward enjoining enforcement of § 609.735.

predicted will save thousands of lives.  Moreover, while plaintiffs focus on the alleged harm to their ability to vote in person, it is far more likely that enjoining enforcement of EO 20-81 would seriously disrupt the upcoming election by discouraging voter turnout and limiting the number of people willing to staff polling places.  The balance of harms and the public interest both weigh very heavily against enjoining enforcement of EO 20-81.

Having carefully considered all of the *Dataphase* factors, the Court finds that plaintiffs are not entitled to a preliminary injunction.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiffs' motion for a preliminary injunction [ECF No. 8] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 2, 2020                     s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge